## BERTHA RASK v. JOHN S. NORMAN.[1]

### December 13, 1918.

### No. 21,012.

**Contract based on friendship — breach not actionable.**

1. Contracts entered into or promises made on the basis of relations
of friendship and good will, unsupported by pecuniary or material bene-
fit, create at most bare moral obligations, binding only on the conscience,
and a breach thereof presents no cause for redress by the courts.

**Same.**

2. A promise founded on that relation by a business associate to the
effect that he would look after and protect the business interests of the
promisee's wife after his death, *held* not enforceable in law or equity.

Action in the district court for Hennepin county to recover $11,250
for an alleged breach of trust. In his answer defendant admitted that
certain stock issued to and owned by Oscar Rask in the Norman Bakery
Company was transferred to plaintiff by her husband; that on or about
February 1, 1915, defendant sold and transferred his stock in the cor-
poration to one A. E. Watson. The case came before Fish, J., who
granted defendant's motion for judgment on the pleadings. From the
judgment entered pursuant to the order for judgment, plaintiff ap-
pealed. Affirmed.

*George W. Hanson* and *A. E. Helmick,* for appellant.
*George S. Grimes,* for respondent.

BROWN, C. J.
The only question presented in this cause in whether the complaint

[1]Reported in 169 N. W. 704.

states a cause of action. The trial court held that it did not and granted defendant's motion for judgment on the pleadings.

The action is one to recover damages claimed to have resulted from the alleged fraudulent representations and fraudulent conduct of defendant, and the breach of an alleged trust assumed by him in the interest and for the benefit and protection of plaintiff. The facts made the basis of plaintiff's claim, as set forth in the complaint, are substantially as follows: Plaintiff is the widow of Oscar Rask, who died in December, 1913, and who will hereinafter be referred to as decedent. On June 1, 1907, defendant and decedent were and for several years prior thereto had been copartners engaged in operating the "Franklin Avenue Bakery" in the city of Minneapolis. Decedent had contributed one-third and defendant two-thirds of the capital invested, and each gave his whole time to the management of the copartnership affairs, defendant guiding the financial and decedent the working or mechanical end thereof. The net profits were divided in accordance with their respective interests in the company. The business had been profitable and on June 1, 1907, the copartnership had assets and property on hand of the value of about $35,000, in excess of all debts and liabilities. At about that time the parties organized a corporation named "The Norman Baking Company," with a capital stock of $75,000, to which they transferred all and singular the copartnership property and business, in payment of which the corporation issued to decedent its capital stock of the par value of $10,000, and to defendant its capital stock of the par value of $20,000. So that in the new concern the interests of the respective parties in the property and business of the company remained the same as when operated by the copartnership. Thereafter and until the death of decedent defendant continued in charge of the financial and decedent the mechanical part of the affairs of the company to the same extent as before the formation of the corporation. The business continued prosperous and the stock held by each party was worth above face value at the time of the transaction here complained of.

Sometime in the spring or summer of 1913 decedent was taken with an illness, from which he never recovered. During the last stage of such illness, sometime in July of that year, he called defendant to his bedside for a conference and for advice and assistance in reference to his

business affairs, and the disposition of his interests in the corporation. As a result of this conference and under the guidance of defendant decedent transferred to his wife the stock held by him in the corporation, and she thereby became the sole owner thereof. This stock constituted the sum total of decedent's property.

Decedent was concerned as to the future welfare of his wife, and at the conference just referred to stated to defendant that she was unfamiliar with business methods, and he requested and urged defendant, after the death of decedent, to look after her affairs and her interests in the corporation, and to see that she received her just dues and dividends therein; at the same time stating to defendant that he trusted him as he would no other man, that he hoped defendant "would be a good friend to and protect as far as possible the business interests" of decedent's wife. Defendant promised to comply with this request in all respects. Decedent subsequently died, and thereafter plaintiff, his widow, in the language of the complaint, "remained a warm personal friend of" defendant "and placed her stock and business interests wholly in" his hands, and in all matters in reference thereto "reposed great trust in him," following his advice and instructions in all matters connected with the management of the corporation affairs. And in this connection the complaint further alleges that defendant "represented to plaintiff that he was her best friend, that he was faithful to the trust reposed in him" by decedent  *  *  *  and thereby "purposely prevented the plaintiff from acquiring any knowledge of" his "real intentions."

The complaint then goes on to allege that on February 1, 1915, defendant falsely represented to plaintiff that the business of the corporation was in poor condition, that a great amount of money must be expended to put it in good order, and further falsely represented that it was imperative that both plaintiff and defendant sell their interests in the company, and that he knew a person who would buy them out at a good figure. In reliance upon such representations plaintiff consented to a sale of her stock in the corporation. That thereafter she attended a meeting of the corporation for the purpose as she supposed of making a sale of her stock as well as that held by defendant, for which she expected to realize, according to the representations of defendant, the sum of $112.50 per share. Immediately after this meeting defendant

sold and transferred his stock consisting of 20 shares to one Watson for the consideration of $22,500; he subsequently stated to plaintiff that Watson would take her stock at the same price. This Watson declined to do, and denied that he had agreed with defendant to purchase the same. Shortly thereafter defendant, according to the complaint, broke off all business and social relations with plaintiff and has ever since and now does refuse to have any business relations with her whatever.

The affairs of the corporation were thereafter conducted by Watson. Plaintiff continued a stockholder, and to receive whatever dividends were subsequently declared thereon. The business, however, by reason of mismanagement or other cause became badly involved financially and at the time of the commencement of this action, some two years after defendant terminated his relations therewith, the corporation was unable to meet its obligations and was on the verge of bankruptcy, by reason of which plaintiff alleges the stock held by her became of no value whatever. The complaint alleges further that plaintiff was defrauded and deceived by the false representations of defendant, heretofore referred to, in consequence that she suffered a loss to the extent of the value of her stock in the corporation on the date defendant sold his interest therein, namely, $11,250, for which she demands judgment. The claim is that defendant violated his obligations to her and betrayed his trust when he failed to effect a sale of her stock at the time he disposed of his own to Watson.

We are clear from the facts stated, which in point of substance are all that plaintiff presents, that the learned trial court was right in holding that the complaint shows no right of recovery either at law or in equity.

1. The whole foundation of the action is the alleged breach of the promise made by defendant to decedent to protect plaintiff's business interests in the corporation after decedent's death. But that promise was not founded on a consideration in the legal sense, and created no valid obligation of performance. It was an act of friendship and good will. It is well settled law that contracts entered into or promises made on the basis of relations of that character, unsupported by pecuniary or material benefit, create at most bare moral obligations, binding only

on the conscience; a breach of which is not redressible in the courts. Mason v. Campbell, 27 Minn. 54, 6 N. W. 405; Muir v. Kane, 55 Wash. 131, 104 Pac. 153, 26 L.R.A.(N.S.) 519 and note, 19 Ann. Cas. 1180; Fidelity & C. Co. v. Thompson, 128 Cal. 506, 61 Pac. 94; Linz v. Schuck, 106 Md. 220, 67 Atl. 286; Freeman v. Dodge, 98 Me. 531, 536, 57 Atl. 884, 66 L.R.A. 395; Parsons v. Teller, 188 N. Y. 318, 80 N. E. 930. The complaint therefore shows no right of recovery at law.

2. The complaint is equally defective in equity. No equitable relief is demanded, and none could be awarded which would repair the injury claimed to have been suffered in consequence of the alleged wrongful conduct of defendant. He has misappropriated none of her property, nor led her into any imprudent or unwise investment from which she lost or from which he reaped a profit. She still owns all the property she held at the time of defendant's alleged promise, namely, the stock in the corporation. She supposed from the statements of defendant that Watson would buy the stock, but he declined to buy it, and denied that he had ever agreed with defendant to do so. There is no claim that defendant prevented a sale thereof to any other person. She continued to hold the stock after defendant had parted with his interests in the corporation, and received whatever dividends were subsequently declared thereon. The loss of which she complains, the diminished value of the stock, resulted either from the failure of the corporation to maintain its former standard, or from other causes not indicated by the complaint as chargeable to misconduct on the part of defendant. That defendant had the right to sell and dispose of his stock without including that held by plaintiff seems clear, and he was under no legal duty or obligation to make a sale for plaintiff. She was fully advised of the necessity of selling the stock and knew, for she so alleges in the complaint, that after defendant sold his stock he severed all relations with the corporation. He was not her guardian, and she was thrown on her own resources from that time. Defendant may have violated his promised friendship for plaintiff, but there is no basis for holding that at the same time he violated any valid or binding obligation to her. He was not a trustee either of an express or implied trust.

It follows that the trial court was right in directing judgment on the pleadings, and the judgment appealed from must be affirmed.

It is so ordered.