**Walter W. KERSHAW, Plaintiff and Appellant,**

v.

**TRACY COLLINS BANK & TRUST COMPANY, administrator of the Estate of Hallie Love Dennis, also known as Mrs. Charles F. Dennis, Defendant and Respondent.**

**No. 14512.**

Supreme Court of Utah.

March 4, 1977.

Walter R. Ellett, Murray, for plaintiff and appellant.

James W. Beless, Salt Lake City, for defendant and respondent.

BALDWIN, District Judge:

Plaintiff, Walter Kershaw, filed this action against Defendant, Tracy Collins Bank & Trust Company, Administrator of the Estate of Hallie Love Dennis, asking judgment as satisfaction of a claim against the Estate of Mrs. Dennis, for services rendered Mrs. Dennis during her lifetime, and after death of her husband. The District Court, based upon the pleadings, admissions and deposition of Plaintiff Kershaw, granted defendant's motion to summary judgment, dismissing the complaint. Appellant makes no claim that there are disputed factual questions for determination other than determination of the value of the services rendered.

Hallie Dennis was the widow of Earl Dennis who died in January 1972. Walter Kershaw, plaintiff, was in his words, the closest friend, "buddy," long-time brother Mason and Shriner and active fellow Presbyterian of Earl Dennis.

Earl Dennis named Tracy Collins Bank & Trust Company as Trustee for Mrs. Dennis and the trustee paid what was necessary for her support and maintenance. Mrs. Dennis died in 1975 and left an estate consisting of a home, a substantial Certificate of Deposit and jewelry. During her lifetime she had her own checking account to pay her personal expenses.

During the three years after death of Earl Dennis, Kershaw by his own account, took over the supervision of the personal life of Mrs. Dennis, until her death. He rendered many services to her, chauffered her, bought groceries, ran errands, did minor repair work at her home, hired and fired nurses and doctors, arranged for her to get a new lawyer, advised her on gifts she wanted to make and in general was attentive and ran her life.

Kershaw assumed the supervision of Mrs. Dennis' life because he thought he had been "charged" by his Masonic brother to look after Earl's widow. There was never any agreement, written or oral, for payment of his services. He never asked for or demanded during her lifetime, any compensation for the services, and Mrs. Dennis never

offered or agreed to pay him. She accepted the fact that her husband had "charged" his brother Mason to look after his widow.

Mrs. Dennis died in February 1975. Kershaw filed a claim for $6,600 with the administrator of her estate. The claim was rejected and suit filed for the value of the services rendered for the three-year period. Kershaw did receive as a bequest, a valuable diamond ring, from Mrs. Dennis and the claim of Kershaw credited $2,000 for the ring received, leaving a net claim of $4,600. Mrs. Dennis' will of 1972 contained a provision that gave Kershaw an option to purchase the diamond ring for $2,000. Kershaw arranged for her to obtain the services of a lawyer, selected by Kershaw, and a codicil to the will was executed May 2, 1974, bequesting the ring to Kershaw.

Kershaw admitted she had bequeathed him the ring as compensation for services he rendered to her.

Appellant's claim is one in quantum meruit for the rendering of personal care, preserving her estate and supervising her affairs after the death of her husband.

■ Clearly every benefit conferred is not recompensable and unjustly received. Purely voluntary services are not compensable[1] and services rendered out of a moral obligation are not compensable.[2] Services rendered gratuitously and without expectation by both parties that compensation be paid are not compensable.[3]

■ This court has recognized the general theory of quantum meruit and in *Gleason v. Salt Lake City*, (1937) 94 Utah 1, 74 P.2d 1225, sets forth the general rule as follows:

. . . *Ordinarily* when services are rendered by one person for another, and voluntarily and knowingly accepted, *without more*, the law will imply a promise to pay what the services were reasonably worth. . . . [Emphasis ours.]

As set forth in that case, to find an implied promise, all of the facts must be examined to determine the intention of both parties, as to whether pay was expected by the renderer, and to be paid by the recipient of the services.

The Court in *Burton v. McLaughlin*, (1950) 117 Utah 483, 217 P.2d 566, decided a quantum meruit case involving personal services rendered to a decedent in his lifetime by a neighbor, applied Williston Contracts, Rev.Ed., Para. 36, p. 95:

. . . It is a question of fact if services are accepted whether a reasonable man in the position of the parties would understand that they are offered in return for a fair compensation, or would rather suppose either that they are offered gratuitously, or if not, that the recipient might think so. . . . Intimate friends sometimes render services gratuitously, and how close must relationship be to make one presumption or another applicable? The question is purely one of fact, varying in every case, but with the burden always on the party, who alleges a contract and seeks to enforce it, to prove its existence.

The Court in the *Burton* case found that the extensive nursing care rendered was not such as could possibly be expected from a neighbor as gratuity; that the neighbor had provided food and medicine for the decedent; that the decedent had admitted that she owed the neighbor reimbursement; and that these facts could make for an implied contract.

The District Court, examining all the facts, could well find that Mrs. Dennis looked upon Kershaw's services as those from a friend and as a gratuity; that she did not expect to pay for them, except by way of the bequest of the ring; that Kershaw was a volunteer; and that he did not expect pay for the services, which were the services normally expected of a friend; and that those facts negated any implied contract.

In *McCollum v. Clothier*, (1952) 121 Utah 311, 241 P.2d 468, cited at 98 C.J.S. Work &

1. 98 C.J.S. Work & Labor, p. 723.

2. 17 Am.Jur.2d, 948.

3. 98 C.J.S. Work & Labor, pp. 723, 724, 725.

Labor, pp. 720, 724, 725 and 727, is restated the general quantum meruit rule:

. . . It is appreciated that this rule should not be applied to bind one under implied contract who merely permits services to be rendered him, or accept benefits from another, under such circumstances that he may reasonably assume they are given gratuitously. The law should not require everyone to keep on guard against such possibilities by warning persons offering services that no pay is to be expected. It is, therefore, essential that the court should exercise caution in imposing the obligations of implied contract, as contrasted to express contract, where the parties have actually defined and agreed to the terms they are to be found by. With such caution in mind, the test for the court to apply was: Under all the evidence, were the circumstances such that the plaintiff could reasonably assume he was to be paid and that the defendant should have reasonably expected to pay for such services. . . .

Justice Wolfe in the McCollum decision, 241 P.2d page 473, concurred in the language in the main opinion and said: .

. . . My comment on this wise statement is that it appears to me that our courts have merely paid lip service to it or ignored it altogether. It is too easy in this state for one to surprisingly find himself a promisor under an implied contract.

. . . All of us are familiar in life with instances where a seeming volunteer ingratiates himself into the confidence of another only to be later revealed as a self-seeker. . . .

■ In *Manwell v. Oyler*, (1961) 11 Utah 2d 433, 361 P.2d 177, the plaintiff sued to recover payments voluntarily made by him on defendant's land, without any consideration or adequate promise for repayment. Plaintiff claimed that whereas defendant had been materially benefited, defendant had a moral obligation to repay. This court held that a moral obligation by itself is not sufficient as legal consideration; that cir-

cumstances in addition to a purely moral obligation "must be such that it is reasonably to be supposed that the promisee (plaintiff) expected to be compensated in some way therefor."

■ The general rule that a moral obligation based on relations of friendship and good will is not matter for legal redress is set out in *Rask v. Norman*, 141 Minn. 198, 169 N.W. 704, 17 A.L.R. 1296. The Minnesota court would not allow recovery on the promise of one business associate to another, in his last illness, to look after and protect the business interests of the latter's wife, which was made on the basis of friendship and good will and was unsupported by pecuniary or material benefit.

*Vogl v. Goldrick's Estate*, (1929) 198 Wis. 500, 224 N.W. 741, is close in fact. Vogl, a bank president and long-time friend of Mr. Goldrick, performed some manual yard work, clerical services and gave business advice to Mrs. Goldrick, the widow living next door. Only after Mrs. Goldrick's death, Vogl made a claim in quantum meruit for eight years' services. The Wisconsin court denied the claim, saying that the relation existing between those parties would not raise an implied contract. The court added:

. . . Claimants, silent in the lifetime, become voluble when their pretended debtors can no longer speak. Such claims are not favored in law. . . .

■ Kershaw's own statements prove that any requests and demands made by Mrs. Dennis certainly did not contemplate that she would compensate him. On the contrary, it appears clearly that she was expecting gratuitous services from Kershaw because of their long-standing friendship and because of the known "charge" given to Kershaw by his "buddy" and brother Mason, Earl Dennis.

Kershaw testified in deposition, that he had no agreement with Mrs. Dennis, or any promise by her, for payment, past or future. His services were gratuitously rendered, and he did not ask or expect pay at the times when rendered or in the future.

Kershaw's services included change of Mrs. Dennis' will. Her will of January 27, 1972, gave to Kershaw an option to buy a certain diamond ring for $2,000 on her death. He "ordered" her attorney who had been employed at the suggestion of Kershaw in 1972 to prepare a codicil to her will. The codicil of 1974 revoked the provision of the will giving Kershaw the option to buy the diamond ring, and it bequested the ring to him outright and he did accept the diamond ring after her death.

Kershaw admitted that Mrs. Dennis knew that Earl Dennis had requested him to take care of her and she accepted the service of Kershaw as from a friend and a fellow member of the Presbyterian church and believing that Kershaw was sincere in fulfilling his Masonic obligation to protect and care for the widow of a brother Mason. Kershaw's services were not necessary. Tracy Collins Bank, did provide whatever necessary for her support and welfare. Kershaw's acts were those which should be expected of a long-time friend, and Hallie did accept them for what they were, namely, gratuities.

The record is abundantly clear that plaintiff did not expect payment and the facts do not establish an express or implied contract for payment of his services. They were given gratuitously and pursuant to what he felt was a moral obligation. No demand for payment was made during the lifetime of Mrs. Dennis and she made no offer or suggestion for payment, other than the bequest of the diamond ring.

The judgment of the District Court is affirmed.

CROCKETT, MAUGHAN, WILKINS and HALL, JJ., concur.

ELLETT, C. J., having disqualified himself, does not participate herein.