In the Matter of S & S INDUSTRIES, Detroit Plastic Products, Anchor Bay Plastics, S & S Products and Star Plastics Company, Inc., Debtors.

VEND–A–MATIC, INC., Plaintiff,

v.

FOOTHILL CAPITAL CORPORATION and Venture Industries Corporation, Defendants.

Bankruptcy Nos. 81–02303–B, 81–02304–B, 81–02305–B, 81–02306–B and 81–02307–B. Adversary No. 83–0332–B.

United States Bankruptcy Court, E.D. Michigan, S.D.

Feb. 27, 1984.

Bodman, Longley & Dahling by John E. Chosy, Detroit, Mich., for Foothill Capital Corporation.

Goldstein, Goldstein & Bershad, P.C. by Kevin F. Carr, Detroit, Mich., for Vend-a-Matic, Inc.

Kutinsky, Davey & Solomon by Sheila Solomon, Madison Heights, Mich., for Venture Industries Corporation.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

On April 20, 1981, Detroit Plastic Products (debtor) filed for relief under chapter 11 of the Bankruptcy Code. On April 29, 1981, the case was converted to chapter 7. When the case was converted, the debtor owed Foothill Capital Corporation (Foothill), a secured creditor, $4,807,977. This debt was secured by all assets of the debtor. Since the secured debt apparently exceeded the fair market value of the assets securing Foothill's debt, the trustee abandoned the assets to Foothill. However, to assure that the abandoned assets would yield the best possible price to preserve any possible equity for unsecured creditors, the trustee and the creditors' committee insisted that the order of abandonment provide that any offer obtained by Foothill for the abandoned assets would be subject to court approval. In November of 1982, Foothill sold the assets, with court approval, to Venture Industries Corporation (Venture). Venture prepared the bill of sale which contained a list of the property being conveyed. In addition to the property listed, the premises on which the property was stored contained eleven vending machines. The vending machines were owned by a company known as Vend-A-Matic, Inc. (Vend-A-Matic), who leased them to the debtor. Vend-A-Matic was aware that the debtor had filed the chapter 11 proceeding and that a trustee had been appointed. The president of Vend-A-Matic called the trustee and inquired about the procedure for recovering the machines. Upon learning that a court order would be necessary before any property could be removed from the building, Vend-A-Matic decided to leave the machines on the premises in the hope that any future buyer of the building would decide to continue to use them. Unfortunately, the trustee failed to notify Vend-A-Matic that the assets were abandoned to Foothill. After the consummation of the sale, Ven-

ture took possession not only of the property enumerated in the bill of sale but also of the eleven vending machines. Venture repaired five of these machines. The machines that were repaired had an estimated value of $1,400 prior to repair. After their repair, at a cost of $7,700, their estimated value was $4,000.

On February 20, 1982, Vend-A-Matic filed a complaint for conversion against the trustee, Foothill and Venture. Subsequently, the action against the trustee was dismissed and Venture filed a cross-claim against Foothill, alleging that if Vend-A-Matic is entitled to the equipment, then Foothill is liable for breach of warranty of title. In addition, Venture seeks its out-of-pocket expenses from Vend-A-Matic for repairing the machines.

The initial question that must be addressed is what property Foothill conveyed to Venture.

The property itemized in the bill of sale makes no mention of vending machines. Venture contends, however, that the failure to list the vending machines in the list of property incorporated in the bill of sale does not conclusively establish that the vending machines were not in fact sold to it. Section 440.2202 of Michigan's Uniform Commercial Code, Venture contends, permits the court to consider parol evidence on the issue whether the vending machines were in fact intended to be, and in fact were conveyed by the bill of sale. Section 440.2202 provides, in pertinent part, as follows:

> Terms ... which are ... set forth in a writing intended by the parties as a final expression of their agreement ... may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
> (a) by course of dealing or usage of trade ... or by course of performance ... and
> (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

M.C.L. § 440.2202. Thus, parol evidence may be used under the conditions specified in section 440.2202, but it clearly cannot be used if "the court finds the writing to have been intended ... as a complete and exclusive statement of the terms of the agreement."

Venture, prior to consummating the sale with Foothill, compiled an exhaustive inventory of the property to be purchased. This inventory is set forth in an Exhibit "A" which accompanies the bill of sale. The Exhibit consists of eight pages of machinery and equipment, six pages of office furniture, ten pages of miscellaneous machines and equipment, and a seven-page list of inventory. Under the miscellaneous machines and equipment heading, the Exhibit also lists additional equipment, such as:

224 - Steel Baskets
14 - Steel Tote Bins
11 - Heavy Steel Shelfs
2 - Iron Shelfs—(25' X 3')
41 - Assembled White Iron Shelfs
Misc. Unassembled Ends and
Conectors—(White Iron Shelfs)
2 - Nut Runners

*Building Auxiliary Equipment:*

Included in the property being purchased is all existing Auxiliary Equipment including—Chillers, Water Towers, Electrical, Air, Plumbing and other necessary items for an Injection Mold Manufacturing Operation.

The miscellaneous machines and equipment list also contains a catch-all provision which precedes the additional equipment list and reads as follows:

> Included in the property being purchased is all Machinery, Fixtures, Equipment, Tools, Shop Maintenance Supplies, Shelving and Storage Bins—Physically located on the premises as of October 29, 1982, even if not specifically indicated on this Exhibit "A"—Part 3, (where is, as is).

In addition, an Addendum to the Exhibit lists four pages of equipment specifically excluded from sale. The list prepared by

Venture makes clear that Venture was purchasing all of the machinery and equipment that the debtor had employed in its manufacturing process. When the parties intended to include assets not employed in the manufacturing process, they specifically listed these items. From an examination of the itemized, exhaustive list of property prepared by Venture and the circumstances surrounding the sale, it is clear that the bill of sale was intended to be a complete and exclusive listing of the property that was to be conveyed by Foothill to Venture. For this reason, the court at the hearing held on August 17, 1983 ruled that Venture could not introduce parol evidence to vary the agreement of the parties. However, the court permitted Venture to introduce evidence on this issue for the purpose of making a record. The testimony so offered is at best conflicting. Even if it were admissible, such testimony does not establish that the property sold to Venture by Foothill was intended to include the vending machines. For the foregoing reasons, the court finds that Foothill did not intend to convey the vending machines to Venture, nor were they conveyed by the terms of the sales agreement or by the order of the court. Accordingly, Venture has no cause of action against Foothill.

The only question that remains is whether Vend-A-Matic, the owner of the vending machines, must compensate Venture for either the costs expended in repairing the machines or for the increase in their market value. Venture apparently contends, although the memorandum submitted is not completely clear, that the equitable doctrine of quasi-contract imposes an obligation on Vend-A-Matic to compensate it for the expenses incurred by it in repairing the machines. "[Q]uasi contractual liability for unjust enrichment is based upon the ground that a person receiving a benefit, which it is unjust for him to retain, ought to make restitution or pay the value of the benefit to the party entitled thereto." *Mehl v. Norton,* 201 Minn. 203, 275 N.W. 843, 844 (1937). The retention of a benefit without payment may result in enrichment, but such enrichment is not necessarily legally unjust. "A *quantum meriut* recovery requires a showing that a defendant has voluntarily accepted a benefit which would be inequitable for him to retain without payment...." *Plastics & Equipment Sales Co. v. DeSoto, Inc.,* 91 Ill.App.3d 1011, 47 Ill.Dec. 487, 415 N.E.2d 492, 498 (Ill.App.Ct.1980). Venture has not done so.

Venture was aware that an ownership question existed with respect to the machines before the sale was consummated. In early November of 1982, the assistant to the president of Venture inquired of a Mr. Anderzak, who was acting on behalf of Foothill, as to the ownership of the vending machines. Mr. Anderzak replied: "I told him I did not know who owned the vending machines. That's all I could tell him. There have been no claims [sic] to my knowledge at that point for the vending machines." Record at 41. In light of this conversation, if Venture had intended that the machines be included in the sale, it should have added the machines to the exhaustive list of property that it had prepared. It did not do so. Moreover, it would have been a simple matter to resolve the question of ownership after the sale. Venture purchased the assets at a hearing held in the bankruptcy court and pursuant to an order of the bankruptcy court. Venture, therefore, knew or should have known that the assets which it was purchasing were assets of a defunct debtor. Venture could very easily have ascertained who owned the vending machines by making inquiry of the trustee or the debtor, or it could have moved to have this issue determined by the court. Again it did not do so. The services performed by Venture were voluntary. Vend-A-Matic did not make any request that they be performed. One cannot be said to be unjustly enriched by retaining benefits involuntarily acquired. *Kershaw v. Tracy Collins Bank & Trust Co.,* 561 P.2d 683, 685 (Utah 1977); *Restatement of Restitution* §§ 2, 112 (1937).

Quasi-contractual relief is not available ... where the benefit is conferred officiously or gratuitously, the services were rendered in order to gain a business advantage, the plaintiff did not contemplate a fee at the time the services were rendered, or the defendant could not have reasonably believed that plaintiff expected a fee.

*Plastics & Equipment Sales Co.,* 201 Minn. 203, 475 N.E.2d at 498. Justification for this conclusion is self-evident.

Nothing could more encourage carelessness than the acceptance of the principle that one who by mistake performs labor upon the property of another should lose nothing by his error, but should have a claim upon the owner for remuneration. Why should one be vigilant and careful of the rights of others if such were the law? Whether mistaken or not is all the same to him, for in either case he has employment and receives his remuneration; while the inconveniences, if any, are left to rest with the innocent owner. Such a doctrine offers a premium to heedlessness and blunders, and a temptation by false evidence to give an intentional trespass the appearance of an innocent mistake.

*Isle Royale Mining Co. v. Hertin,* 37 Mich. 332, 337–38 (1877). Venture decided to take a gamble to retain and repair the vending machines, with the hope that no one would make a claim to them. It cannot now be heard to complain if it lost that gamble.

An appropriate order to be submitted.