**Robert J. SPARKS, Jr., personally and as Executor of the Estate of Robert J. Sparks, Sr., deceased, Appellant.**

v.

**Ernie GUSTAFSON and Nome Business Venture, Inc., an Alaska Corporation, Appellees.**

No. S–1603.

Supreme Court of Alaska.

Feb. 19, 1988.

Reginald J. Christie, Jr. and David Gorman, Jim Christie & Associates, Anchorage, for appellant.

C.R. Kennelly, Kennelly, Azar & Donohue, P.C., Anchorage, for appellees.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

MATTHEWS, Justice.

Robert J. Sparks, Jr., executor of his father's estate (Estate), appeals from a superior court decision ordering the Estate to pay $65,706.07 to the plaintiff, Ernie Gustafson, in compensation for management services that Gustafson rendered to the Estate and for maintaining and improving Estate property. The central issue presented here is whether it is unjust to allow the Estate to retain these benefits without paying for them. In particular, Sparks argues that Gustafson gave his services to the Estate gratuitously, without the Estate's knowledge or consent.

## FACTS AND PROCEEDINGS

The decedent, Robert Sparks, Sr., and the plaintiff, Ernie Gustafson, were personal friends and business associates for many years. In 1980 Sparks purchased a one-half interest in the Nome Center Building. Gustafson managed the building for Sparks without charge until Sparks died on March 1, 1981. Thereafter Gustafson continued to manage the building and collect rents on behalf of Sparks, Sr.'s estate, with the knowledge and approval of the executor, Robert Sparks, Jr. Gustafson did not request any compensation for his services.

Under Gustafson's management, Nome Center operated at a loss. The Estate deposited $10,000 in a Nome Center account to cover operating expenses, but the amount was not sufficient to meet the necessary costs of insurance, mortgage payments, utility bills, and repairs. Gustafson often paid Nome Center expenses out of his own pocket. Maintenance and remodeling work were performed by Gustafson, using in part his own funds. Although he mailed monthly reports of the Nome Center's income and expenses, these reports did not include all of his own expenditures.

In February, 1982, the Estate signed a document entitled "purchase agreement" which indicated that Gustafson had purchased the building from the Estate, and would assume the deed of trust as soon as the purchase details could be worked out. However, no purchase details were ever agreed upon. The Estate sold the building to a third party in February, 1983, and Gustafson ceased to manage the property at that time.

On July 14, 1983, Gustafson and his business corporation, Nome Business Venture, Inc., filed suit against the Estate and the executor in Nome, claiming that the defendants breached an oral agreement to sell the Nome Center Building to Gustafson. Plaintiffs subsequently filed an amended complaint which further alleged that Gustafson was entitled to recover for funds and services that he expended on the building under a statutory or equitable lien theory. Defendants filed an answer and counterclaimed for an accounting of all monies collected and expended on the building.

At trial the superior court found that Gustafson had no enforceable lien. The court also concluded that it would be inequitable to allow the Estate to retain the benefits that Gustafson had conferred upon Nome Center at his own expense. The court ordered the Estate to pay Gustafson $65,706.07 in compensation for the services and improvements that he conferred upon the Estate during his two years of managing the Nome Center Building. This appeal followed.

## I. ALLEGED PROCEDURAL ERRORS

### A. *Continuance*

At the outset, Sparks contends that his request for a continuance to conduct further discovery was improperly denied on the eve of trial. The request arose when the Estate discovered, one to two months before trial, that business records produced

by Gustafson had omitted approximately $30,000 to $50,000 of rental income that he had received from Nome Center and converted to his own use, plus an uncertain amount of income received from the sale of its furnishings. On September 10, 1985, twenty days before trial, the Estate moved to continue the trial for eight months in order to conduct further discovery into other amounts of income that the manager may have failed to turn over to the Estate. The trial court denied the motion to continue without comment, merely ordering Nome Business Ventures to make all its records available for inspection and copying in the week before trial.[1]

We have said that "a trial court's refusal to grant a continuance will not be disturbed on appeal unless an abuse of discretion is demonstrated." *Siggelkow v. Siggelkow,* 643 P.2d 985, 986 (Alaska 1982), *quoting Gregoire v. National Bank of Alaska,* 413 P.2d 27, 33 (Alaska 1966), *cert. denied,* 385 U.S. 923, 87 S.Ct. 238, 17 L.Ed.2d 147 (1966).

■ A party who seeks to continue a case set for trial must show that he acted with due diligence upon the grounds for which the continuance is sought. *Cheek v. Hird,* 9 Kan.App.2d 248, 675 P.2d 935, 937 (1984). *See Miller v. Sears,* 636 P.2d 1183, 1191–92 (Alaska 1981). A continuance based on the absence of evidence is properly refused if the applicant failed to use due diligence to produce the evidence by testimony, deposition, or other method. *Matter of Estate of Katschor,* 543 P.2d 560, 562 (Okla.1975). In this case the Estate waited nearly two years from the filing of the complaint, and more than one year from the filing of its answer and counterclaim, before it requested the production of plaintiffs' business records. It had eighteen months from the date of its answer to conduct discovery, secure witnesses, and prepare for trial, but it waited until the last six months to request vital information in discovery. In our view the Estate failed to pursue discovery in a timely fashion, thus denial of the motion for continuance was proper. *Cf. Brock v. Weaver Bros., Inc.,* 640 P.2d 833, 836–37 (Alaska 1982) (where

only one set of interrogatories had been requested in three year period since accident, it was not an abuse of discretion to deny request for additional time to conduct discovery); *Miller v. Sears,* 636 P.2d at 1192 (five months is an adequate period in which to conduct discovery).

### B. *Waiver*

■ Sparks contends that the trial court erred in awarding Gustafson and Nome Business Ventures damages under a theory of unjust enrichment because the theory was not put forth in their complaint. The complaint does not clearly encompass an unjust enrichment theory of relief. However, the failure to plead a theory of recovery is immaterial where that theory is tried with the express or implied consent of the appellants. Alaska R.Civ.P. 15(b) provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

This court has twice discussed the circumstances which give rise to implied consent to try issues not stated in the pleadings. In *Alaska Protection Services v. Frontier Colorcable, Inc.,* 680 P.2d 1119, 1124 (Alaska 1984) the court refused to find implied consent to try an issue on which the evidence was brief, undeveloped, and one sided. In *Hill v. Ames,* 606 P.2d 388, 390 (Alaska 1980) the appellant introduced evidence relevant to theories of equitable relief which were not contained in the pleadings. Because the appellee had no opportunity to present countervailing evidence on those theories, the court declined to consider the theories on appeal.

■ The parties' conduct in the case at hand differs greatly from that found in *Alaska Protection Services* and *Hill.* Although the theories which plaintiffs

---

1. The Estate also raises a series of procedural objections to venue, which are without merit.

presented for trial were murky at best, Sparks' counsel indicated at the beginning of trial that he viewed plaintiffs' claim as one for unjust enrichment and was prepared to try the case as such.[2] Testimony was then taken without Sparks' objection on the elements necessary to prove unjust enrichment.[3] Under these circumstances the trial court did not err in deciding the case on an unjust enrichment theory.

## II. DISCUSSION ON THE MERITS: UNJUST ENRICHMENT

■ Unjust enrichment exists where the defendant has received a benefit from the plaintiff and it would be inequitable for defendant to retain the benefit without compensating plaintiff for its value. *E.g., Bevins v. Peoples Bank & Trust Co.,* 671 P.2d 875, 881 (Alaska 1983); *Restatement of the Law of Restitution* § 1, comment a (1937). Sparks claims that plaintiffs failed to prove either element of unjust enrichment: first, that the Estate received any benefit from plaintiffs, and second, that if a benefit was received then its retention would be unjust.

■ A person confers a benefit upon another if he gives the other some interest in money, land or possessions; performs services beneficial to or at the request of the other; satisfies a debt of the other; or in any way adds to the other's advantage. *Restatement of the Law of Restitution* § 1, comment b (1937). In this case Gustafson made substantial repairs and improvements to the Nome Center, provided management services that kept Nome Center operating, and paid debts incurred by Nome Center, all arguably on the Estate's behalf. There is no question that Gustafson conferred a benefit upon the Estate.

■ Even where a person has conferred a benefit upon another, however, he is entitled to compensation only if it would be just and equitable to require compensation under the circumstances. *Restatement of the Law of Restitution* § 1, com-

ment c (1937). Courts will allow the defendant to retain a benefit without compensating plaintiff in several situations, one of which is relevant to the case at hand: where the benefit was given gratuitously without expectation of payment. *Murdock–Bryant Construction v. Pearson,* 146 Ariz. 48, 703 P.2d 1197, 1203 (1985). *See also* Dawson, *The Self-Serving Intermeddler,* 87 Harv.L.Rev. 1409 (1974), *cited in Frontier Rock & Sand v. Heritage Ventures,* 607 P.2d 364, 368 n. 9 (Alaska 1980). Appellants argue that this situation is present in the case before us.

This court has not yet addressed the circumstances which give rise to a finding of gratuitous intent. A good discussion of this issue in the context of a decedent's estate can be found in *Kershaw v. Tracy Collins Bank & Trust Co.,* 561 P.2d 683 (Utah 1977). In that case the decedent's best friend provided a variety of services to the decedent's widow, including chauffeuring, buying groceries, running errands, and performing minor repair work. *Id.* at 684. The court looked at the extent of the services provided to the widow, the closeness of the relationship between the parties, and the fact that the plaintiff never sought compensation until after the widow died. The court found that the widow had not been unjustly enriched, since plaintiff's services were not necessary for the widow's existence and were of the sort which could reasonably be expected from a long time friend. *Id.* at 687.

■ In this case there was a similarly close relationship between the plaintiff and the decedent. It appears that Gustafson managed the Nome Center Building for the decedent without requesting compensation, in recognition of many long years of friendship and business association together. At trial, the executor testified that he thought Gustafson would continue to manage the building for two years after Sparks' death out of the goodness of his heart, without expectation of payment. Gustafson never

---

**2.** Sparks' counsel told the court: "[w]e would describe it, the plaintiff's claim ... more as an unjust enrichment type of claim ..."

**3.** Trial testimony included the hours of work which Gustafson expended on the property; the

expenditures which he made on the property through his two business entities, Nome Business Ventures and B & E Investments; and the reasons why he conveyed these benefits to the Estate.

requested compensation for his services during his tenure as the Nome Center manager for the Estate. The closeness of the parties' relationship and Gustafson's failure to request compensation in a timely manner suggest that Gustafson offered his services to the Estate gratuitously.

However, the services that Gustafson performed for the Estate were not the sort which one would ordinarily expect to receive from a friend as a mere gratuity. Gustafson spent approximately five hours a day for two years collecting rents for Nome Center, soliciting new tenants, making repairs and improvements, paying utility, insurance and mortgage bills out of his own pocket when rental income fell short of expenses, and performing other general maintenance and management services for the Estate. These are the types of extensive business services for which one would ordinarily expect to be paid. We therefore agree with the trial court that Gustafson's services were not offered gratuitously.[4]

Sparks argues that a distinction should be made between remodeling expenses[5] and those which were for maintenance and general management. He argues that the remodeling expenditures were made solely to benefit Gustafson. This argument, however, was not raised below. Indeed, Sparks argued that if Gustafson had established any claim for relief his damages should be limited to $62,706.07. "If the court finds any of Plaintiff's theories supported by evidence, Defendant's damage theory [that damages are limited to $62,506.07] is the only correct basis for an award of damages." The court followed this suggestion, adding only one $3,200 item which is not presently in dispute. Since Sparks' damage theory was accepted by the trial court (with the exception of $3,200), Sparks has waived his right to contend that a further breakdown of damages should have been made. *Williams v. Alyeska Pipeline Service Co.*, 650 P.2d 343, 351 (Alaska 1982) (arguments not raised in trial court will not be considered on appeal). While "plain error" is an exception to the rule of waiver, *Miller v. Sears*, 636 P.2d at 1189, it does not exist here. Sparks' argument that the remodeling expenses did not benefit the Estate is facially incorrect since at least some of the rental income which the Estate received is directly related to the remodeling expenditures.[6]

The judgment of the superior court is AFFIRMED.

---

4. The trial court's finding stated:

8. That this court, after examining all the evidence presented by the parties and personally observing the demeanor of the witnesses herein, finds that plaintiffs, Gustafson and NBV, expended time and money on behalf of the Estate of Sparks, Sr. and to the benefit of the estate, at the implied request of the executor of the Estate, Sparks, Jr., with the implied promise of the Estate to pay plaintiffs therefore, and the services and money that plaintiffs Gustafson and NBV rendered were value to the Estate and to the executor and did preserve the assets of the Estate in the amount of $62,506.07, the reasonable value thereof and the reasonable value plaintiffs deserve therefore, and the defendant Estate of Sparks, Sr. would be unjustly enriched by these activities of plaintiffs in this said amount, if not awarded the said $62,506.07.

(Footnote omitted)

5. Sparks identifies some $34,000 in expenses which he contends was related to remodeling.

6. Rent from Doyon/Ghemm, $25,463.34, falls within this category.