Harold GROSS, Appellant and Cross-Appellee,

v.

The BAYSHORE LAND COMPANY, Appellee and Cross-Appellant.

Nos. S–711, S–713.

Supreme Court of Alaska.

Dec. 13, 1985.

Rehearing Granted in Part and Opinion Amended Jan. 28, 1986.

---

Gordon F. Schadt, John K. Bodick, Bledsoe & Schadt, Anchorage, for appellant and cross-appellee.

Lee Holen, Johnson & Holen, Robert A. Mintz, Kris Cassity, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON, and MOORE, JJ.

## OPINION

BURKE, Justice.

This is an appeal from a final judgment, dismissing on the merits a breach of contract action brought by Harold Gross ("Gross") against Bayshore Land Company ("Bayshore"). Gross appeals from the trial court decision, claiming that Bayshore did not properly anticipate a breach of Gross' obligations. Bayshore cross-appeals claiming that Gross' noncompliance with Alaska's Construction Contractors Registration Act, AS 08.18, is an alternative basis for affirming the trial court's judgment. We agree with Bayshore that Gross is barred from suit by AS 08.18.151.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Bayshore is a corporation in the business of subdividing land and selling lots, primarily to builders. Gross is a self-employed general contractor in the business of building houses. Gross has performed home construction work under the name of "Creative Builders, Inc." since 1974.

Creative Builders was registered as a general construction contractor from April 26, 1974 to April 18, 1975, when registration was revoked due to bond cancellation. Creative Builders was also registered from March 13 to June 30, 1978. Creative Builders was not registered from April 18, 1975 to March 13, 1978, nor from June 30, 1978 to the date of this action. Creative Builders was involuntarily dissolved as an Alaska corporation by the State of Alaska in September 1980. In May 1981, Gross applied to renew the registration, but voluntarily withdrew the application.

According to Bayshore, during 1977–78 Gross built houses on thirteen lots in Dimond Birch Subdivision. During 1980–81 he built houses in Bayshore Subdivision, Granite View Subdivision, Knik Heights, and Sleepy Hollow Subdivision. Since 1974, Gross has built approximately 40 houses, despite his unregistered status.

Harold Gross represented himself to be a contractor to Bayshore. Gross presented plans to Bayshore, and Bayshore looked at Gross' previously constructed houses to make sure that their quality and Gross' skills met their standards. Judy Rich, a real estate agent employed by Realty Center, Inc., and the listing broker for Bayshore, also represented to Bayshore that Gross was a skilled and qualified builder.

On February 6, 1981, Gross and Bayshore entered into a contract entitled "Receipt and Agreement to Purchase," for the sale of nine lots in the Bayshore West No. 2 Subdivision. Under the terms of the contract, Bayshore agreed to sell Gross nine lots in the Bayshore Subdivision and subordinate one-half of the purchase price "until home built on lot has sold and closed." Gross agreed to purchase the nine lots and to construct houses on the lots, with construction on all lots beginning by July 1, 1982.[1]

On June 23, 1982, Gross obtained a conditional commitment for a loan from Alaska Bank of Commerce ("ABC") in the amount of $247,000.00. After closing costs and interest reserves, the loan would provide Gross with $227,000.00 in distributable funds. The loan included funds for the construction of a complete house on only one lot, and it would provide funds to pay off half the purchase price of three additional lots. The loan would also provide sufficient funds to begin construction on all of the lots, by providing funds for utilities and foundations. Gross intended to obtain additional funds to complete construction on the three remaining lots. Gross then scheduled closing with an agent at Lawyer's Title.

According to Bayshore, Gross did not inform them of the nature of his financing, or the type of lien which Bayshore would be required to subordinate. Bayshore apparently learned through inquiries at ABC that Gross intended Bayshore to subordinate its interest in four lots to one senior loan to construct a complete house on only one lot.

On June 29, 1982, Dickson G. Pratt, vice president of Bayshore, responded in a hand-delivered letter to Gross' request to close. The letter stated in part:

> As you have chosen to delay closing until this time, *it now appears impossible for you to meet the conditions precedent to*
>
> Buyer to start construction on all lots by 7/1/82.
> Buyer to pay 12% interest only on the balance of any unsubordinated lots beginning 1/1/81 and will execute Note(s) monthly for accrued interest.

---

1. The contract stated in part:
   Buyer to pay ½ of price of lot on first construction draw.
   Seller to subordinate ½ of lot price until home built on lot has sold and closed.
   Buyer to present house plans, appraisals and Earnest Money Agreements to Seller for approval.

*our obligation to further finance any portion of the purchase price of the lots.* The subject agreement to purchase clearly indicates you are required to commence construction on all lots not later than July 1, 1982. As you have not submitted the plans and appraisals (and earnest money agreements, if any) on such lots to us for our approval, nor have you obtained the approval of any such plans by the Architectural Control Committee pursuant to the C.D. & R.'s applicable to the property, there is now insufficient time for you to close, secure such approval of plans and still meet your obligations to commence construction by July 1.

(Emphasis added).

Gross subsequently filed suit against Bayshore for breach of contract for its failure to close on the lots. Bayshore moved to have the action dismissed on the grounds of Gross' failure to plead and prove registration as a construction contractor as required by AS 08.18.151. The trial court denied the motion. At trial, Bayshore moved for a directed verdict on the same grounds, which was again denied. Gross' motion for reconsideration was also denied.

In its Memorandum Decision, November 30, 1983, the superior court held that Gross was not entitled to damages because Bayshore properly repudiated the contract by anticipating Gross' breach. Gross maintains the trial court erred in so holding.[2] Bayshore cross-appeals the denial of its motion to have the suit dismissed because Gross failed to comply with the registration requirements of AS 08.18.

## II. GROSS' ACTION FOR BREACH OF CONTRACT WAS BARRED BY AS 08.18.151

A person acting in the capacity of a contractor who is unregistered at the time

2. The appropriateness of Bayshore's repudiation of the contract on June 30, 1982 is not discussed here. Interpretation of the contract is not required in light of our holding today.

3. AS 08.18.151 provides:

of contracting is barred from bringing an action in state court for breach of contract. AS 08.18.151.[3] A critical issue in this case is whether the trial court erred in holding that the Gross/Bayshore contract was a "contract for the sale of homes," *and* that registration as a contractor was not required.

Bayshore argues that the February 6, 1981 contract is one for which registration is required under AS 08.18.151 because the contract obligated Gross to undertake construction. Moreover, according to Bayshore, Gross held himself out as a contractor, and Bayshore relied upon Gross' representations.

Gross contends that the contract was a land sale agreement, rather than a construction contract, and thus no registration was required under the statute. Furthermore, he argues, he was not acting in the capacity of a contractor when he signed the contract with Bayshore, and Bayshore was not in the class the statute was designed to protect. And, in the alternative, Gross contends that he is excused from the registration requirement under the equitable doctrine of substantial compliance.

Resolution of this issue requires us to focus upon three questions: (1) whether Gross was a contractor within the meaning of AS 08.18.171(2); (2) whether Bayshore was an intended beneficiary of the registration statute; and (3) alternatively, whether Gross substantially complied with the registration requirements, such that AS 08.18.151 does not bar Gross' action.

### A. *Is Gross A Contractor Under AS 08.18.171(2)?*

■■ AS 08.18.171(2) states that a contractor is a person who "undertakes or offers to perform, or claims to have the

A person acting in the capacity of a contractor may not bring an action ... for breach of a contract for which registration is required ... without alleging and proving that the contractor was a registered contractor at the time of contracting for the performance of the work.

capacity ..." to construct a fixed structure.[4] In *Industrial Power & Lighting Corp. v. Western Modular Corp.*, 623 P.2d 291 (Alaska 1981), we stated that "the word 'undertakes' as it is used in AS 08.18.-171(2) is not limited to a contractual undertaking, but must be understood in the more general sense of setting about, engaging in, or entering upon an activity described in the statute." *Id.* at 296 (footnotes omitted).

This court held that Industrial Power fell within the definition of "contractor" under AS 08.18.171(2). Industrial Power was undertaking construction since "the contract to purchase the prefabricated units was certainly the beginning of Industrial Power's undertaking to accomplish the project it had planned." *Id.*

In the present case, Gross' purchase of the lots and his agreement to start construction on those lots by July 1, 1982 must be viewed as "undertaking construction" under the *Industrial Power* definition. By agreeing to purchase lots and to begin building homes, Gross may be deemed a contractor under AS 08.18.171(2).

This view is bolstered by the fact that Gross represented himself as a contractor, and Bayshore relied on that representation. Additionally, Gross admitted in a stipulation between the parties that his "capacity as a construction contractor *was material* to the agreement entered into" between the parties. (Emphasis added). Thus, Gross "claim[ed] to have the capacity to construct a fixed structure" within the meaning of AS 08.18.171(2), and should have been registered as a contractor when he contracted with Bayshore.

Gross argues that the contract was for the purchase of lots, and not the construction of homes. However, the trial court found that there was a contractual require-

ment that homes be built upon the Bayshore lots, a requirement which "related to the profitable overall development of [Bayshore's] subdivision as well as the protection of [Bayshore's] subordinated interest." We agree with the trial court and Bayshore that Gross contractually committed himself to undertake construction.

**B.  *Is Bayshore an Intended Beneficiary of AS 08.18?***

█ The *Industrial Power* opinion indicated that an important step in analysis focused on the intended beneficiaries of the AS 08.18 registration requirements. The majority rejected the dissent's "contractual commitment" standard because such a standard would exclude contracts between builders and suppliers which do not commit a professional builder to build anything, and would deny suppliers the protection afforded by the bond requirement of AS 08.18. 623 P.2d at 296–97.

Under the terms of the Gross/Bayshore contract, Bayshore was a subordinated seller who had the value of its lots and its surrounding lots in the subdivision at risk.[5] As a subordinated seller, Bayshore had an interest in Gross' construction skills and the houses which would ultimately stand in the Bayshore subdivision. Bayshore expressed this interest by requiring that Gross meet certain conditions precedent to the purchase agreement: (1) that Gross begin construction by July 1, 1982, and complete construction within three years; and (2) that Gross present house plans to Bayshore for approval.

Furthermore, as Bayshore points out, land holding companies like Bayshore are very often the only entities which, as a practical matter, can exact compliance with the statutory registration requirement.

---

4.  AS 08.18.171(2) defines "contractor" as:
    a person who, in the pursuit of an independent business, undertakes or offers to perform, or claims to have the capacity to perform, or submits a bid for a project to construct, alter, repair, move or demolish a building, highway, road, railroad, or any type of fixed structure ....

5.  We recognized this risk in *Stenehjem v. Cho*, 631 P.2d 482, 488 (Alaska 1981) ("It is widely recognized that a subordination agreement is unfavorable to the seller and can greatly increase the risk the seller incurs in the transaction.").

Where a land holding company subordinates its lien to allow the contractor to obtain construction financing, the contractor may build on speculation and without a contract with a buyer. Thus, the ultimate home sale would not involve a contract for construction.

Bayshore concludes that in this situation a contractor need never register since no penalty can be incurred either deriving from the contractor's dealing with the land supplier or the ultimate home buyer. Bayshore asserts that by contracting with Gross, in reliance upon his representation that he was a registered contractor, Bayshore was protecting its own interests as well as those of the ultimate home buyer. If Gross were to build defectively on one or more of the lots he purchased from Bayshore and then default in the real estate contract to Bayshore before selling the property in question to a third person, he might be liable to Bayshore if his improper work was so defective as to impair the original value of the property. *See, e.g., Cousineau v. Walker,* 613 P.2d 608 (Alaska 1980) (where a real estate sale is rescinded, and the vendee has damaged the building on the property and removed large amounts of gravel, the vendee is liable). *Morris v. Weigle,* 270 Ind. 121, 383 N.E.2d 341, 344 (1978) (where a vendee defaults, the vendee is liable to the extent that waste impairs the vendor's security in the property); *Robison v. Katz,* 94 N.M. 314, 610 P.2d 201, 207 (N.M.App.1980) (where a real estate sale is rescinded, the vendee must account for any waste). Such liability would be covered by the bond required under AS 08.18.071. We agree with Bayshore that it falls within the class of intended beneficiaries of the statute.

Therefore, we hold that Gross was a contractor within the meaning of AS 08.18.-

171(2), and that he was required to comply with the registration requirements of AS 08.18.011.

## C. *Did Gross Substantially Comply with Registration Requirements?*

Gross maintains that he substantially complied with the registration requirements of AS 08.18; hence his suit should not be barred. He argues that because he had a valid bond and insurance as required under the statute, he satisfied the essential elements of the statute. We do not believe that Gross has sufficiently complied with the statute for us to utilize the equitable doctrine of substantial compliance.

Registration as a construction contractor under AS 08.18 requires: a registration fee,[6] a surety bond,[7] and public liability and property damage insurance.[8] Registration must be renewed annually.[9] In addition, no person registered under one name may act in the capacity of a contractor under any other name unless that name also is registered.[10] Registration was intended by the legislature to ensure "competence and financial responsibility in those who undertake work as contractors." *Sumner Development Corp. v. Shivers,* 517 P.2d 757, 763 (Alaska 1974); *see also Industrial Power,* 623 P.2d at 303 (Rabinowitz, C.J., concurring in part, dissenting in part).

When the contract was formed on February 6, 1981, Gross was not registered with the State of Alaska as a general contractor.[11] In fact, he had not been registered since March 1978, although he submitted an application in May 1981 which he subsequently withdrew. Gross was insured and had a $5,000 surety bond in the name of Creative Builders.

6. AS 08.18.031.

7. AS 08.18.071.

8. AS 08.18.101.

9. AS 08.18.031.

10. AS 08.18.051.

11. Gross asserts that he was licensed as a mechanical contractor when the contract was formed. Gross' assertion is misleading, however. Gross had a business license with the Municipality of Anchorage as a mechanical contractor under the name DeBest Plumbing and Heating. He also maintained a state *business* license for 1981 and 1982 for DeBest Plumbing and Heating. His state *contractor's* license for the plumbing company did not become effective until May 21, 1981, three months after the formation of the Gross-Bayshore contract.

■ The statutory bar precluding legal actions by contractors unless the contractor is registered at the time of contract formation may be avoided by the contractor's substantial compliance with the registration requirements. *Jones v. Short*, 696 P.2d 665, 668 (Alaska 1985) (the contractor, in renewing his registration, had filed all necessary documents with his insurance carrier who then failed to promptly process the application for renewal). Substantial compliance involves conduct which falls short of strict compliance with statutory registration requirements, but which affords the public the same protection that strict compliance would offer. *Alaska Protection Services v. Frontier Colorcable*, 680 P.2d 1119, 1122 (Alaska 1984).

■ A contractor who has not registered at all, not filed the required surety bond, nor obtained insurance has not substantially complied with the registration requirements of AS 08.18.151. *State ex rel Smith v. Tyonek Timber*, 680 P.2d 1148, 1155 (Alaska 1984). The burden of compliance is solely the responsibility of the unlicensed contractor. *Id.*

■ A contractor who is registered, bonded, and insured, but who contracts under an unregistered name, has substantially complied with AS 08.18.051 since he has "sufficiently 'afforded the other party the effective protection of the statute.'" *Frontier Colorcable*, 680 P.2d at 1122 (quoting *Latipac, Inc. v. Superior Court*, 64 Cal.2d 278, 49 Cal.Rptr. 676, 411 P.2d 564, 566 (1966)).

■ Gross has not substantially complied with the construction contractor's registration requirements because Gross' failure to register at all prevented the public from ascertaining his status. In fact, state records available to the public [12] at the time of the contract's formation would have shown that Gross had not been registered since 1978, and that Creative Builders was involuntarily dissolved in September 1980. Gross' registration did not lapse for a short period, due to an insurance

broker's negligence as in *Jones*. On the contrary, Gross has not been registered since 1978. Two months before signing the contract, Gross filed and then withdrew his application for registration. Consequently, he was well aware of his non-registered status at the time of contract formation. Moreover, Gross was not registered with the State under another trade name, as in *Frontier Colorcable*.

## III. CONCLUSION

■ Gross is a contractor under AS 08.-18.171(2). The purchase agreement is a contract for which registration is required. Bayshore is within the class the legislature intended to protect under the contractor's licensing act. Gross was therefore required to register as a contractor. Gross did not substantially comply with the registration requirements because he did not afford the public or Bayshore the same protection which strict compliance would offer.

We, therefore, AFFIRM the trial court's dismissal because Gross' claim for breach of contract was barred by AS 08.18.151.