John McCORMICK, Appellant,

v.

RELIANCE INSURANCE CO., Appellee.

No. S–9813.

Supreme Court of Alaska.

May 10, 2002.

Mary L. Pate, Eide & Miller, P.C., Anchorage, for Appellant.

Randall E. Farleigh, Choquette & Farleigh, LLC, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Alaska Statute 08.18.151 bars a contractor from suing for compensation unless the contractor either met or was in substantial compliance with the contractor registration requirements when the contract was formed. Because there are genuine, material fact disputes about whether John McCormick substantially complied with these requirements when he contracted to perform services on a public works project, we reverse the summary judgment that dismissed his Little Miller Act claim against the general contractor's surety. We do not reach McCormick's alternative argument that he was Alaska Electric's employee.

## II. FACTS AND PROCEEDINGS

In May 1999 John McCormick orally contracted with Alaska Electric Company, an electrical subcontractor on an Anchorage International Airport runway project, to provide end-dump trucking services at the rate of $60 per hour. McCormick worked on the runway project from May 10 through Sep-

tember 8, 1999. Although McCormick initially provided only end-dump trucking services on the project, Alaska Electric eventually asked McCormick to provide additional services, including excavation, installing electrical vaults, and driving an Alaska Electric truck to purchase fuel and materials for the construction site. McCormick also furnished a service van, a small semi-tractor, and various tools to the site.

McCormick submitted invoices for completed work to Alaska Electric, which forwarded the invoices to Wilder Construction Company, the general contractor on the project. Wilder then issued checks made out to both Alaska Electric and McCormick for invoices approved by Alaska Electric. McCormick was paid for all work performed through July 17, 1999.

As of October 1, 1999 McCormick had received no payment for work he performed after July 17, 1999. On October 1 he gave Wilder written notice, as required by AS 36.25.020(b),[1] of a claim for $48,186.23 for services he claimed he rendered from July 18 through September 8, 1999. The same day Wilder sent McCormick a check for $12,375.96.[2] Wilder claimed that the services McCormick rendered from July 18 through September 8 were outside the scope of the agreement to provide end-dump trucking services at the rate of $60 per hour, and that McCormick was entitled only to a labor rate of $27.32 per hour for those services.

On November 12, 1999 McCormick filed a superior court complaint against Alaska Electric and Reliance Insurance Company. The complaint alleged that Alaska Electric breached the contract and the covenant of good faith and fair dealing. It asserted a Little Miller Act[3] claim against Reliance, which had furnished a surety bond for Wil-

der. In April 2000 Reliance moved for summary judgment, claiming that it was entitled to judgment as a matter of law, because (1) McCormick's registration with the state as a contractor had expired before he contracted with Alaska Electric, and (2) McCormick filed his claim prematurely. McCormick opposed Reliance's motion and cross-moved for summary judgment.

The superior court dismissed McCormick's Little Miller Act claim against Reliance on summary judgment because John McCormick was not registered "under AS 08.18.011 et seq." at relevant times. The court denied McCormick's cross-motion for summary judgment.

McCormick moved for reconsideration, claiming that the superior court had failed to consider his alternative argument that he was an employee of Alaska Electric, and that he was therefore not required to register as a contractor in order to sue for unpaid compensation. The superior court denied the reconsideration motion and entered a final judgment in favor of Reliance. McCormick appeals.

## III. DISCUSSION

### A. Standard of Review

▄▄▄ We review a grant of summary judgment de novo and affirm if the evidence in the record fails to disclose a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[4] We view the facts in the light most favorable to the non-moving party.[5] We apply our independent judgment to any questions of law, adopting the rule of law that is most persua-

---

1. AS 36.25.020(b) provides in relevant part:

   [A] person having direct contractual relationships with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond has a right of action on the payment bond *upon giving written notice* to the contractor within 90 days from the last date on which the person performed labor or furnished material for which the claim was made.

   (Emphasis added.)

2. According to Reliance's brief, "[p]ayment of the last check [for $12,375.96] had nothing to do with the demand by counsel for [McCormick] which was received after Wilder's check was issued."

3. AS 36.25.010–.025.

4. *Mathis v. Sauser,* 942 P.2d 1117, 1120 (Alaska 1997).

5. *Id.*

sive in light of precedent, reason, and policy.[6]

### B. It Was Error to Dismiss McCormick's Little Miller Act Claim Against Reliance on Summary Judgment.

#### 1. There are genuine issues of material fact about whether McCormick substantially complied with AS 08.18's registration requirements.

■ McCormick's only claim against Reliance was under the Little Miller Act. That statute "requires that the primary contractor ... on a public works project post a bond to the state or political subdivision thereof 'for the protection of all persons who supply labor and material in the prosecution of the work provided for in the contract...;'"[7] The Little Miller Act further provides:

> A person who furnishes labor or material in the prosecution of the work provided for in the contract for which a payment bond is furnished ... and who is not paid in full before the expiration of· 90 days after the last day on which the labor is performed or material is furnished for which the claim is made, may sue on the payment bond for the amount unpaid at the time of suit.[8]

A contractor may not sue under the Little Miller Act without alleging· and proving that the contractor was a registered contractor at the time of contract formation.[9] "Registration as a construction contractor under AS 08.18 requires: a registration fee, a surety bond, and public liability and property damage insurance."[10] "Registration was intended by the legislature to ensure 'competence and financial responsibility in those who undertake work as contractors.' "[11]

Because "the legislature chose the closing of the doors of the courts as a fundamental tool to enforce its policy of ensuring competence and financial responsibility in those who undertake work as contractors," we have consistently enforced AS 08.18.151's requirement that a contractor must be registered at the time of contract formation in order to maintain an action for compensation.[12] But because "statutes which cause forfeiture are not favored,"[13] we have adopted the doctrine of substantial compliance.[14] We have held that AS 08.18.151's statutory bar may be abrogated by a contractor's substantial compliance with the registration requirements.[15]

■ "[S]ubstantial compliance involves conduct which falls short of strict compliance with the statutory registration requirements, but which affords the public the same protection that strict compliance would offer."[16] Substantial compliance generally requires "that the contractor be registered [usually under a different name] and have bonding and insurance coverage, since these are the primary means by which the statute seeks to protect parties dealing with contractors."[17] But when a contractor is not registered at the time of contract formation, a court can still find substantial compliance if (1) the contractor's prior registration or other public information would give the public the same

---

6. *Id.*

7. *State v. Tyonek Timber, Inc.,* 680 P.2d 1148, 1156 (Alaska 1984) (quoting·AS 36.25.010).

8. AS 36.25.020(a).

9. AS 36.25.020(c) ("A suit under this section is subject to AS 08.18.151."); AS 08.18.151 (providing that contractor may not bring action "in a court of this state for the collection of compensation for the performance of work or for breach of a contract for which registration is required ... without alleging and proving that the contractor was a registered contractor at the time of contracting for the performance of the work").

10. *Gross v. Bayshore Land Co.,* 710 P.2d 1007, 1012 (Alaska 1986) (citations omitted).

11. *Id.* (citations omitted).

12. *Tyonek Timber,* 680 P.2d at 1157 (emphasis omitted) (quoting *Sumner Dev. Corp. v. Shivers,* 517 P.2d 757, 763 (Alaska 1974)).

13. *Id.*

14. *Gross,* 710 P.2d at 1012–13; *Jones v. Short,* 696 P.2d 665, 667 (Alaska 1985); *Alaska Protection Serv. v. Frontier Colorcable, Inc.,* 680 P.2d 1119, 1122 (Alaska 1984).

15. *E.g., Jones,* 696 P.2d at 668.

16. *Jones,* 696 P.2d at 668 n. 10 (quoting *Alaska Protection Serv.,* 680 P.2d at 1122).

17. *Alaska Protection Serv.,* 680 P.2d at 1122.

information that current registration would give (i.e., the contractor's insurance information); and (2) the contractor's bond and insurance remained effective during the period his or her registration lapsed.[18]

It is undisputed that McCormick's registration with the state as a general contractor expired on December 31, 1998, and that McCormick was not registered when he contracted with Alaska Electric. McCormick contends that it was nonetheless error to dismiss his Little Miller Act claim on summary judgment based on his lack of registration, because he substantially complied with AS 08.18's registration requirements.

We first address McCormick's argument that information about his bonding and insurance was readily available to the public even after his registration expired. McCormick asserts that "[a] phone call to the Alaska Department of Labor, Division of Occupational Licensing would have revealed all [of] McCormick's information, including his bonding and insurance because the Department keeps these records for several years on their system, even when a contractor is currently unregistered." McCormick also notes that when he contracted with Alaska Electric, he had a valid contractor's license issued by the Municipality of Anchorage, and a business license issued by the state.

Drawing all reasonable factual inferences in favor of McCormick, the non-moving party, as we must when reviewing a grant of summary judgment,[19] we conclude that evidence of (1) McCormick's prior registration with the Division of Occupational Licensing, (2) the valid contractor's license issued by the Municipality of Anchorage, and (3) the business license issued by the state was sufficient to raise a genuine factual dispute about the continuing availability of McCormick's bonding and insurance information to the public during the lapse in his registration.

■ We next consider McCormick's argument that his bond and insurance actually remained in effect after his registration

lapsed. We conclude that the evidence in the record does not establish as a matter of law that McCormick was not bonded during the relevant period.[20]

McCormick upgraded his state license from specialty contractor to general contractor in March 1998. At the same time, he increased his surety bond from $5,000 to $10,000 by obtaining a rider to the bond his surety, the Star Insurance Company, had previously issued to him. The rider incorporated the "agreements, limitations and conditions" of the original bond. The original bond provided that liability under the bond "shall be continuous until the certificate of registration is revoked or otherwise terminated by the Department of Commerce and Economic Development or until 30 days after the surety sends written notice of cancellation [to] the Department of Commerce and Economic Development, Division of Occupational Licensing, State of Alaska."

Reliance argues that under the terms of the bond agreement, McCormick's bond was automatically canceled on December 31, 1998, when McCormick's state registration as a general contractor expired, and that McCormick was therefore not bonded when he worked on the runway project beginning in May 1999. But the Star Insurance Company, McCormick's surety, sent a notice of cancellation to the state Department of Commerce and Economic Development on August 10, 1999. That notice stated: "The above bonding Company hereby notifies you that it has elected to cancel said bond in its entirety. This Notice is given to you in accordance with the cancellation provision in above mentioned bond and applicable state insurance statutes." The fact that McCormick's bonding company sent the notice reasonably permits an inference that it considered itself still bound when it sent that notice to the state in August 1999. If the bonding company had thought that the bond had already expired when the registration expired on December 31, 1998, it is arguable that the bonding

---

18. *Jones,* 696 P.2d at 668.

19. *Anchorage Police Dep't Employees Ass'n v. Municipality of Anchorage,* 24 P.3d 547, 549 (Alaska 2001).

20. Reliance does not dispute McCormick's assertion that he was insured during the period he worked on the runway project.

company would have had no reason to send the August 10, 1999 notice informing the state that Star had "elected to cancel" the bond. This inference in turn raises a genuine factual dispute about whether McCormick was bonded when he worked on the runway project, and thus, whether he was in substantial compliance. We therefore reverse the grant of summary judgment against McCormick and remand for further proceedings.[21]

█ Citing AS 36.25.020(a), Reliance argues that because McCormick filed suit "before the expiration of 90 days after the last day on which the labor [was] performed ... for which the claim is made," it was not error to dismiss McCormick's Little Miller Act claim.[22] But because there is no evidence in the record that Reliance was prejudiced by McCormick's premature filing, requiring McCormick "to commence a new and separate action in these circumstances would [be] to insist upon an empty formalism."[23] We therefore reject this argument as a basis for affirming the grant of summary judgment.

### 2. We do not reach McCormick's alternative argument that he was Alaska Electric's employee.

Alternatively, McCormick argued below, and maintains on appeal, that he was Alaska Electric's employee rather than an independent contractor, and that he was therefore not required to register as a contractor under AS 08.18.171(4).[24]

The superior court's order granting Reliance summary judgment did not address McCormick's argument that he was Alaska Electric's employee.

Because our ruling on the substantial compliance issue requires remand and because the superior court did not consider McCormick's alternative claim that he was an employee, there is no reason for us to address this alternative claim.

## IV. CONCLUSION

For these reasons we REVERSE the grant of summary judgment and REMAND for further proceedings consistent with this opinion.

---

**21.** Although McCormick argues on appeal that he has "established" that he is owed $35,810 for the work he performed between July 18 and September 8, 1999, the only relief he requests on appeal is reversal of the summary judgment granted to Reliance and a remand for further proceedings. We therefore do not decide here whether McCormick is entitled to partial summary judgment on the issue of damages.

**22.** McCormick filed suit on November 12, 1999. The last day on which he claimed he performed work for Alaska Electric was September 8, 1999.

**23.** *United States v. Reiten*, 313 F.2d 673, 675 (9th Cir.1963).

**24.** AS 08.18.171(4) defines "contractor" as

a person who, *in the pursuit of an independent business*, undertakes or offers to perform, or claims to have the capacity to perform, or submits a bid for a project to construct, alter, repair, move, or demolish a building, highway, road, railroad, or any type of fixed structure, including excavation and site development and erection of scaffolding; "contractor" includes a general contractor, builder, mechanical contractor, specialty contractor, and subcontractor....

(Emphasis added.) McCormick asserts that employees on a public works project have a Little Miller Act claim under AS 36.25.020(a). Reliance does not dispute this assertion.