Einar LARSON, Appellant,

v.

Chris BENEDIKTSSON, Appellee.

No. S–11674.

Supreme Court of Alaska.

Feb. 16, 2007.

25. See id. at 221.

Kevin G. Brady, Anchorage, for Appellant.

Isaac Derek Zorea, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

After agreeing to construct two houses for Chris Benediktsson, Einar Larson filed a district court action against Benediktsson for unpaid wages. The controversy in district court centered on Larson's employment status. Alaska law bars unregistered contractors from claiming pay for performing contract work. Larson was not a licensed contractor, but alleged that he worked for Benediktsson as an employee, not as a contractor. After denying summary judgment for Benediktsson on the ground that the facts on this point were disputed, the district court held a trial, found that Larson had worked as an employee, and entered judgment against Benediktsson. On appeal, the superior court reversed the order denying summary judgment without considering the evidence at trial. The main question before us here is whether the order denying summary judgment could be reviewed on appeal after the district court held a trial on the merits. In keeping with the approach followed by most other courts, we hold that an order denying summary judgment on factual grounds becomes unreviewable after trial. Since the district court based its order on the existence of disputed facts, we reverse the superior court's decision on appeal and reinstate the district court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

The relevant facts can be set out briefly.[1] In the fall of 2000 Chris Benediktsson, acting on a recommendation by the owner of Tweed Excavating & Construction (Tweed), telephoned Einar Larson and asked him to estimate the cost for framing two houses on lots Benediktsson owned in Chugiak. Benediktsson advised Larson that Tweed had quoted a price of $40,000 to oversee the construction.

Larson estimated that it would take him about sixty eight-hour days to frame each house and would cost $12,000 per house— about $25 per hour. Larson also said that he did not have a residential contractor's license and did not want to obtain one. Benediktsson responded that he was a general contractor himself and preferred to pay Larson an hourly rate. He told Larson to get started, instructing him to keep track of all extra work so that Benediktsson could "make it right."

Larson picked up the house plans from Tweed, began the project, and continued on the job until October 2001—about a year after he started. In performing his work Larson spent significant amounts of time on various tasks besides framing: correcting deficiencies in the house plans; preparing the sites for construction; performing material "take-offs"; obtaining quotes from various subcontractors and scheduling their work; expediting materials to and from the sites; and generally overseeing the construction of both homes. Although Larson did some of the extra work on his own initiative because it was necessary to enable him to begin his framing, he performed most of it at Benediktsson's specific request.

Throughout the course of the project Benediktsson paid Larson substantially less than his billings and consistently lagged behind in his payments. In early October 2001 Benediktsson visited Larson on the job and demanded that Larson complete both houses within three days. Larson replied that this would be impossible; he then quit working. Benediktsson eventually finished the construction without Larson and sold both houses. In November 2001 Larson sent Benediktsson a final bill for his unpaid work. Benediktsson refused to pay, since Larson had quit working. On December 10 Larson responded to the refusal by recording mechanics liens on Benediktsson's lots totaling $14,760.

### B. Proceedings

#### 1. District court proceedings

In May 2002 Benediktsson filed a district court action to cancel the liens on his proper-

---

1. The district court entered detailed findings after trial establishing the basic facts of the case. These findings have not been challenged on appeal, and we rely on them for our summary.

ty, asserting that Larson had failed to take action to enforce the liens within six months of their filing, as required by Alaska law.[2] Larson promptly answered with a letter advising the court that he was pursuing a claim for wages with the Alaska Department of Labor and asking that his liens be maintained until the claim was resolved. The court accepted Larson's letter as a nonconforming answer to Benediktsson's complaint and scheduled the case for further proceedings.

Larson subsequently retained an attorney, who moved to amend the original answer by adding counterclaims for Larson's unpaid wages. Benediktsson opposed the motion, arguing that it was untimely and alleging that the proposed counterclaim lacked merit because Larson apparently had not been a registered contractor as required under AS 08.18.151 and, "[i]f this is true, Mr. Larson has no standing to pursue any legal actions to collect unpaid wages." The district court granted Larson's motion to amend and allowed him to pursue the counterclaims.[3]

Benediktsson then moved for summary judgment, claiming that Larson could not pursue his counterclaims, because he had worked as a specialty contractor without being properly registered and was therefore barred from suing under AS 08.18.151. Benediktsson supported his motion with evidence establishing that Larson was not a registered contractor when he worked on the houses.

Larson opposed the summary judgment motion, claiming that he had agreed to work as Benediktsson's employee—not as a contractor—after receiving assurances that Benediktsson was a licensed general contractor. Larson supported this claim with a personal affidavit accompanied by his state wages claim, asserting that this evidence raised factual issues concerning his employment sta-

tus, thus precluding entry of summary judgment. After hearing oral arguments on the issue, District Court Judge James Wanamaker denied Benediktsson's motion for summary judgment and set the case for trial, advising the parties that "[t]he central remaining issue to be tried is whether or not Larson was acting as a specialty contractor."

After a bench trial centering on this issue, Judge Wanamaker issued written findings of fact and conclusions of law determining that Larson had performed the work as an employee rather than as a contractor and was entitled to unpaid wages totaling $16,610.09.

### 2. Superior court appeal

Benediktsson appealed to the superior court, limiting his appeal to two narrow points of error: first, that the trial court erred in allowing Larson to amend his complaint to include counterclaims for unpaid wages; second, that the court erred in denying Benediktsson's motion for summary judgment. As to both points Benediktsson urged the superior court to confine its review to the pleadings filed before trial and to conclude as a matter of law that Larson was barred from maintaining his counterclaims because undisputed evidence established that he was not properly registered as a contractor when he performed the disputed work.

Responding to Benediktsson's initial point, Larson argued that the district court had not abused its discretion in allowing him to amend his answer. As to the second point— Benediktsson's challenge to the summary judgment ruling—Larson insisted that the trial court's finding that he had worked as an employee could only be reversed if the superior court reviewed the entire record, including the trial, and was convinced that the district court's findings after trial were clear-

**2.** *See* AS 34.35.080.

**3.** While Larson's original motion to amend was pending, Benediktsson deposited funds with a title company to replace the liens; this required Larson to file a second motion seeking to amend the complaint not only to include the counterclaims but also to add the title company as an indispensable third party. The district court's order allowing the counterclaim actually ad-

dressed this second amended answer. The order granting the amendment in turn prompted Benediktsson to amend his original pleadings to answer Larson's counterclaim, allege affirmative defenses, assert counterclaims against Larson, and name the title company as a party. None of these modified pleadings had any bearing on the issues raised here.

ly erroneous. In Larson's view, ample evidence supported the findings.

The superior court accepted Benediktsson's invitation to limit its review to the summary judgment record. Noting that the case presented "a question of legal interpretation, not factual interpretation," the court determined that it should "review *de novo* the district court's denial of summary judgment." The superior court proceeded to rule that "[a] contractor is defined by the nature of the work performed"; it then found that undisputed evidence showed that Larson performed the work of a contractor without complying with the registration requirements of AS 08.18.011. On this basis, the court concluded that Larson's counterclaims were barred as a matter of law and should have been dismissed on summary judgment. Applying the same rationale, the court further ruled that the district court abused its discretion in allowing Larson to include the counterclaims in his amended answer.

We then granted discretionary review of the superior court's ruling.

## III. DISCUSSION

In seeking review of the superior court's decision on appeal, Larson challenges the superior court's reversal of the district court's order denying summary judgment. He asserts that "the superior court erred by reviewing a nonreviewable interlocutory order." Larson also challenges the superior court's decision to reverse the order allowing him to amend his answer, insisting that the district court did not abuse its discretion in allowing the amendment. Since the summary judgment issue becomes moot if Larson was improperly allowed to amend his answer, we consider the amendment issue first.

### A. Order Granting Larson's Motion To Amend His Answer

■ Larson contends that the district court properly allowed him to amend his

answer by including counterclaims against Benediktsson for unpaid wages. He points out that Alaska's Rules of Civil Procedure require amendments to be "freely given when justice so requires"[4] and that our cases recognize that trial courts have broad discretion to allow amendments.[5] In response, Benediktsson renews the argument accepted by the superior court—that Larson was barred as a matter of law from asserting counterclaims in his answer because he was an unregistered contractor. In addition, to the extent that Larson's counterclaims requested relief under the equitable doctrine of quantum meruit, Benediktsson contends that the district court lacked authority to allow the amendment because the district court is not a court of equity and has no jurisdiction to rule on equitable claims.[6]

■ As Larson correctly recognizes, a party who seeks to amend a pleading after the allotted time period for amending as a matter of right must seek leave of the court; but leave to amend must "be freely given."[7] The trial court has broad discretion to determine whether to allow a party to amend a pleading.[8] We will reverse an order allowing amendment only when our review of the entire record leaves us with a firm and definite conviction that the trial court erred in its ruling.[9]

Here, after Larson sought leave to include his counterclaims in an amended answer, Benediktsson opposed the amendment in part because Larson's motion was untimely. But Larson's attorney had prepared and submitted the motion soon after being retained, and the motion was filed shortly after the sixty-day deadline for amending as a matter of right had expired. These circumstances do not cry out for denial.

Benediktsson also opposed the motion on the ground that Larson's counterclaims were merely an attempt to skirt the requirements

---

4. Alaska R. Civ. P. 15(a).

5. *See, e.g., Shooshanian v. Wagner,* 672 P.2d 455, 458 (Alaska 1983).

6. *See* AS 22.15.050.

7. Alaska R. Civ. P. 15(a).

8. *Shooshanian,* 672 P.2d at 458.

9. *Vertecs Corp. v. Reichhold Chems., Inc.,* 671 P.2d 1273, 1277 (Alaska 1983).

of AS 08.18.151. In advancing this theory, Benediktsson asserted a conclusory claim that Larson had misrepresented himself as a registered contractor and that, accordingly, "it appeared that he had no standing to sue for unpaid wages, pursuant to AS 08.18.151." Benediktsson supported this allegation with a copy of a letter from his own counsel to Larson, advancing similar claims, along with an affidavit by Benediktsson's counsel attesting that he had indeed sent the letter.

These conclusory allegations did not in themselves amount to a prima facie showing that Larson's claims were barred as a matter of law. Moreover, even assuming that some evidence to that effect might have been gleaned from the nature of the work described in the counterclaims themselves, this evidence would hardly have ruled out all possibility of a viable cause of action. To the contrary, our cases demonstrate that the validity of an ostensibly unregistered contractor's claim often turns on specific facts of the case.

Alaska Statutes 08.18.151 requires registration to be alleged and proved whenever a "person acting in the capacity of a contractor" sues for money earned in performing work "for which registration is required":

> A person acting in the capacity of a contractor ... may not bring an action in a court of this state for the collection of compensation for the performance of work or for breach of a contract for which registration is required under this chapter without alleging and proving that the contrac-

tor ... was a registered contractor ... as applicable, at the time of contracting for the performance of the work.[10]

In determining whether specific claimants and claims fall within the scope of this requirement, we have generally looked to the definition of contractor set out in AS 08.18.171.[11] But we have refused to interpret these provisions broadly. Instead, recognizing that rigid enforcement could yield harsh consequences by barring meritorious claims,[12] we have identified flexible standards for determining whether AS 08.18.151 bars particular claims.

For example, we have ruled that section .151 does not bar suit by a contractor who is unregistered but proves substantial compliance with the registration requirements.[13] We have emphasized the importance of determining whether the party an unregistered contractor seeks to sue is an intended beneficiary of the registration requirements.[14] We have inquired whether the claimant made misrepresentations about being a registered contractor and whether these misrepresentations fostered detrimental reliance.[15] More specifically, in a case involving a plaintiff who claimed to have worked as an employee, we have applied a "nature of the work" test similar to the test advocated by Larson below to determine whether the claimant qualified as a contractor or was merely an employee.[16]

As these cases illustrate, determining whether a particular plaintiff qualifies as a

---

10. AS 08.18.151.

11. *See Gross v. Bayshore Land Co.*, 710 P.2d 1007, 1010–11 (Alaska 1985); *Sumner Dev. Corp. v. Shivers*, 517 P.2d 757, 761 (Alaska 1974). AS 08.18.171(4) defines "contractor" as

   a person who, in the pursuit of an independent business, undertakes or offers to perform, or claims to have the capacity to perform, or submits a bid for a project to construct, alter, repair, move, or demolish a building, highway, road, railroad, or any type of fixed structure, including excavation and site development and erection of scaffolding; "contractor" includes a general contractor, builder, mechanical contractor, specialty contractor, and subcontractor.

12. *See, e.g., Brandner v. Agre*, 80 P.3d 691, 694–96 (Alaska 2003); *Alaska Protection Servs., Inc. v.*

*Frontier Colorcable, Inc.*, 680 P.2d 1119, 1121–23 (Alaska 1984).

13. *See, e.g., McCormick v. Reliance Ins. Co.*, 46 P.3d 1009, 1012 (Alaska 2002); *Brandner*, 80 P.3d at 694–95.

14. *See Gross*, 710 P.2d at 1011. *Gross* states that an "important step" is to determine whether the person an unregistered contractor wants to sue is an intended beneficiary of AS 08.18—but *Gross* doesn't explicitly express reluctance at prohibiting unregistered contractors from suing parties the legislature didn't intend to protect. *Id.*

15. *Id.* at 1012.

16. *Sumner Dev. Corp.*, 517 P.2d at 761.

"person acting in the capacity of a contractor" often turns on the resolution of disputed, case-specific facts. Here, when it ruled on Larson's motion to amend his complaint, the district court had no definitive factual basis for concluding that Larson could only assert his counterclaims as a "person acting in the capacity of a contractor" and was therefore barred from suing unless he alleged and proved that he was a registered contractor. Accordingly, the court did not abuse its discretion in refusing to deny Larson's motion to amend on this ground.

Benediktsson separately argues that the district court abused its discretion by allowing Larson to file a counterclaim on the equitable theory of quantum meruit. Benediktsson reasons that this claim was legally barred because the district court lacks jurisdiction to decide claims in equity. But this argument fails on its premise that the district court can never decide an equitable issue. In an analogous setting we have expressly held that when consideration of an equitable claim is necessary and incidental to the resolution of a district court action founded in contract, resolving the claim does not convert the case into an equitable action.[17] Benediktsson's jurisdictional argument fails for a separate reason as well: the district court ultimately based its decision on Larson's claim for breach of contract, not his quantum meruit claim, so any error in accepting the equitable claim would be harmless at most.

In sum, we conclude that Benediktsson has failed to establish that the district court abused its discretion in deciding to allow Larson to amend his answer.

## B. Post–Trial Reviewability of Orders Denying Summary Judgment

As previously mentioned, in deciding Benediktsson's appeal the superior court reviewed and reversed the district court's order denying Benediktsson's motion for summary judg-

ment. In doing so, the superior court confined its decision to the summary judgment record even though the district court had held a full trial on the merits. Larson, relying on analogous cases decided in other jurisdictions, contends that the superior court erred in this ruling because an order denying summary judgment is interlocutory by nature and becomes unreviewable upon entry of a final judgment after trial. Benediktsson, emphasizing prior cases in which this court has reviewed summary judgment rulings,[18] responds that the superior court had authority to review the district court's summary judgment ruling.

### 1. Discussion of this issue in *Ondrusek v. Murphy*

Our consideration of this point is foreshadowed by our recent decision in *Ondrusek v. Murphy*,[19] which was published after the parties here submitted their briefing. In that case, Ondrusek filed an appeal after a jury trial, challenging an order denying summary judgment. The appellee raised no objection to review of the point, opting to oppose Ondrusek's claims on their merits.[20] Given these circumstances, we elected to decide the appeal as presented. We nevertheless questioned whether orders denying summary judgment should be reviewable after trial.[21]

In addressing this question, we pointed out that this court had previously allowed post-trial review of orders denying summary judgment when they addressed legal issues whose resolution affected the trial.[22] In *Ondrusek*, by contrast, the motion for summary judgment had apparently been denied because of an unresolved factual dispute. We noted that in such cases an argument that the summary judgment order became unreviewable after trial "would be favorably received in the federal courts, and in many

---

17. *Brandner*, 80 P.3d at 693–94.

18. Benediktsson specifically emphasizes *Johnson v. Alaska State Dep't of Fish & Game*, 836 P.2d 896, 904 (Alaska 1991).

19. *Ondrusek v. Murphy*, 120 P.3d 1053, 1056 n. 2 (Alaska 2005).

20. *Id.*

21. *Id.*

22. *Id.*

state jurisdictions." [23] After listing numerous federal and state cases addressing the issue—which overwhelmingly militated against reviewing such orders—we briefly considered our own relevant case law, observing that the issue remained open in Alaska. We then stated that we would seriously consider adopting the majority approach when the point was properly raised. [24] The issue we reserved in *Ondrusek* is now squarely before the court.

## 2. Case law in other jurisdictions

Nearly every federal court of appeals has barred at least some post-trial appeals seeking to challenge orders denying summary judgment. [25] The general rule has two expressions: one broad, one narrow. The broader form of the rule outlaws post-trial review of an order denying summary judgment regardless of the reason for denial. The narrower approach prohibits only post-trial review of orders denying summary

judgment on the ground that material factual issues exist.

### a. The broad prohibition

Courts adopting the broader prohibition tend to focus on the main purpose of summary judgment motions—saving litigation time—reasoning that appellate review of an order denying summary judgment serves no purpose after a case is tried and a trial record has been developed. [26] In *Glaros v. H.H. Robertson Co.*, the Federal Circuit explained, "Denial of summary judgment 'is strictly a pretrial order that decides only one thing—that the case should go to trial,' i.e., that the claim *remains pending* for trial." [27] In *Johnson International Co. v. Jackson National Life Insurance Co.*, the Eighth Circuit Court of Appeals echoed this statement, adding that "[t]he district court's judgment on the verdict after a full trial on the merits thus supersedes the earlier summary judg-

**23.** *Id.*

**24.** Specifically, we stated:

> Often summary judgment motions are denied on the basis that there are genuine issues of material fact. At least as to motions denied on that basis, this court will give serious consideration in the future to adoption of what seems to be the majority view concerning reviewability of summary judgment denials, when the point is properly raised.

*Id.*

**25.** *Lama v. Borras*, 16 F.3d 473, 476 n. 5 (1st Cir.1994) ("The [defendants'] attack on the denial of summary judgment has been overtaken by subsequent events, namely, a full-dress trial and an adverse jury verdict. In these circumstances, we will not address the propriety of the denial of summary judgment."); *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 129–30 (2d Cir.1999); *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1234–36 (4th Cir. 1995); *Black v. J.I. Case Co.*, 22 F.3d 568, 570–72 (5th Cir.1994); *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir.1990); *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277–78 (7th Cir.1994); *Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 434 (8th Cir.1994); *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358–59 (9th Cir. 1987); *Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1284–86 (11th Cir.2001); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573–74 & n. 14 (Fed.Cir.1986). The Tenth Circuit Court of Appeals has granted post-trial summary judgment, but distinguished that situation from one in which the summary judgment had been denied

because factual issues existed. *Ruyle v. Continental Oil Co.*, 44 F.3d 837, 842 (10th Cir.1994). In addition to these published opinions, the Court of Appeals for the District of Columbia Circuit has cited some of these cases and refused review in an unpublished opinion. *Robinson v. Garrett*, 1992 WL 132470, at *1 (D.C.Cir. May 8, 1992).

> Although we confine our discussion of the test to federal cases, we note that many state courts likewise reject post-trial appeals of orders denying summary judgment. The reasoning of these courts echoes that of the federal courts. *See, e.g., Evans v. Jensen*, 103 Idaho 937, 655 P.2d 454, 459 (Idaho App.1982) (explaining that a final judgment after trial should be tested upon the record made at trial not at the time summary judgment was denied); *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004) (explaining that after a full trial on the merits the denial of summary judgment merges with the trial); *Morgan v. American Univ.*, 534 A.2d 323, 326 (D.C. 1987); *Skowronski v. Sachs*, 62 Mass.App.Ct. 630, 818 N.E.2d 635, 638 n. 5 (2004) (explaining that no right to review exists when case has proceeded to trial on the merits, unless summary judgment issue was on a different claim than was tried).

**26.** *E.g., Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 434 (8th Cir.1994).

**27.** *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed.Cir.1986) (quoting *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966)).

ment proceedings." [28]

Courts that absolutely ban such appeals have also cited the difficulty of deciding whether the trial court denied summary judgment on legal or factual grounds, especially because trial courts often deny summary judgment without comment.[29] Moreover, in *Black v. J.I. Case Co.,* the Fifth Circuit Court of Appeals questioned whether creating a workable legal/factual dichotomy is realistically possible:

> [S]uch a dual approach would require us to craft a new jurisprudence based on a series of dubious distinctions between law and fact. And, such an effort—added to the tasks of already overburdened courts of appeal—would benefit only those summary judgment movants who failed to properly move for judgment as a matter of law at the trial on the merits. If such motions are properly made, the denied motion for summary judgment need not be reviewed, because the "legal" issues determined by the district court are freely reviewable, and the case may be reversed ... on that basis.[30]

Other courts adopting a broad approach have cited concerns for fairness to the prevailing party at trial. In a frequently quoted passage, the Ninth Circuit Court of Appeals explained its refusal to review any denial of summary judgment as follows:

> To be sure, the party moving for summary judgment suffers an injustice if his motion is improperly denied. This is true even if the jury decides in his favor. The injustice arguably is greater when the verdict goes against him. However, we believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of

the summary judgment motion demonstrated the need for a trial. After considerable research, we have found no case in which a jury verdict was overturned because summary judgment had been improperly denied. We hold, therefore, that the denial of a motion for summary judgment is not reviewable on an appeal from a final judgment entered after a full trial on the merits.[31]

Some courts have apparently converted to the broader view after initially adhering to the narrower form of the rule. In *Holley v. Northrop Worldwide Aircraft Services, Inc.,* the Eleventh Circuit Court of Appeals ruled that review of summary judgment denials would be barred after trial only if the appellant acknowledged by the time of trial that sufficient evidence existed to present the case to the jury or that the evidence originally available on summary judgment had changed in favor of the party opposing summary judgment.[32] In these situations, *Holley* reasoned, barring review is necessary to prevent parties from trying to escape the impact of facts that come to light after the denial of summary judgment: "Summary judgment was not intended to be a bomb planted within the litigation at its early stages and exploded on appeal; instead, it was intended as a device to diminish the effort, time, and costs associated with unnecessary trials." [33] To prevent such abusive tactics, the court declared that "a party may not rely on the undeveloped state of the facts at the time [the party] moves for summary judgment to undermine a fully-developed set of trial facts which militate against [the party's] case." [34] But while *Holley* seemingly intended to adopt only the narrow form of the rule, the Eleventh Circuit in later cases declined to confine *Holley* to its facts, stating without qualification that the denial of a mo-

**28.** *Johnson Int'l Co.,* 19 F.3d at 434.

**29.** *E.g., Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.,* 51 F.3d 1229, 1235 (4th Cir.1995); *Black v. J.I. Case Co.,* 22 F.3d 568, 571 n. 5 (5th Cir.1994).

**30.** *Black,* 22 F.3d at 571 n. 5.

**31.** *Locricchio v. Legal Servs. Corp.,* 833 F.2d 1352, 1359 (9th Cir.1987) (quoted as "persua-

sive" in *Jarrett v. Epperly,* 896 F.2d 1013, 1016 n. 1 (6th Cir.1990)).

**32.** *Holley v. Northrop Worldwide Aircraft Servs., Inc.,* 835 F.2d 1375, 1378 (11th Cir.1988).

**33.** *Id.* at 1377.

**34.** *Id.* at 1378.

tion for summary judgment is unreviewable after a trial on the merits.[35]

### b. The narrow prohibition

A separate group of federal courts has narrowed the prohibition by allowing post-trial appeals of orders denying motions for summary judgment when the orders have been based on legal grounds. The Seventh Circuit Court of Appeals, for example, initially appeared to have adopted the broad approach barring post-trial review.[36] But the following year, it reviewed an order denying summary judgment on legal grounds, recognizing that although post-trial review of orders denying motions for summary judgment is usually barred, the case at issue presented a potentially dispositive legal question, so the subsequent trial did not make the issue moot.[37]

The Tenth Circuit Court of Appeals similarly seemed to adopt the broad rule at first but then narrowed it in a later case. In *Ruyle v. Continental Oil Co.*,[38] the court reversed the trial court's denial of a motion for summary judgment that asserted a theory of collateral estoppel. In doing so, the court of appeals distinguished its earlier ruling adopting the broad form of the rule in *Whalen v. Unit Rig, Inc.*[39] by recognizing the "critical distinction between summary judgment motions raising the sufficiency of the evidence to create a fact question for the jury and those raising a question of law that the court must decide."[40]

The Second Circuit Court of Appeals falls into the same category. In *Pahuta v. Massey–Ferguson, Inc.*, the court adopted the broader rule, simply declaring that it would generally decline to review orders denying summary judgment after a case had been tried.[41] While it has never disavowed *Pahuta's* broad language, the Second Circuit, in *Rothstein v. Carriere*, reversed an order denying summary judgment on legal grounds, even though the case had been tried to a jury after the motion was denied.[42]

The Third Circuit Court of Appeals also has reversed a jury verdict based on review of an order denying summary judgment on legal grounds. In *Pennbarr Corp. v. Insurance Co. of North America*, the district court denied summary judgment on a contract claim.[43] In reversing the order on review after trial, the court of appeals, characterizing disputes about the meaning of contracts as presenting questions of law, ruled that the order was reviewable because the district court had denied summary judgment on a legal basis.[44]

### C. Alaska Case Law

In *Ondrusek*, we recognized that this court has reversed a verdict on the basis of error

---

**35.** *Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1283–84 (11th Cir.2001). In *Chesapeake Paper Products Co.*, 51 F.3d at 1235 n. 8, the Fourth Circuit Court of Appeals similarly declined to follow *Holley's* fact-based bar, opting instead to join courts applying the broader rule barring all post-trial appeals of orders denying summary judgment.

**36.** *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 279 (7th Cir.1994).

**37.** *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1318 (7th Cir.1995) ("[T]he principle that an order denying summary judgment is rendered moot by trial and subsequent judgment on the merits is intended for cases in which the basis for the denial was that the party opposing the motion had presented enough evidence to go to trial.").

**38.** *Ruyle v. Continental Oil Co.*, 44 F.3d 837, 842 (10th Cir.1994).

**39.** *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1250–51 (10th Cir.1992).

**40.** *Ruyle*, 44 F.3d at 842.

**41.** *Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 130 (2d Cir.1999) ("Based on our review of the case law in this circuit, the Federal Rules of Civil Procedure, the reasoning of other circuits, and principles of judicial economy, we now join the rising chorus of circuits that have concluded that such an appeal will not ordinarily lie.").

**42.** *Rothstein v. Carriere*, 373 F.3d 275, 283–84 (2d Cir.2004) (holding that a party need not make any motion at trial to preserve question whether district court erred as a matter of law in denying summary judgment motion when disputed order ignored applicable state law).

**43.** *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 149 (3d Cir.1992).

**44.** *Id.* at 149–50.

in denying summary judgment on at least one occasion—a case in which the order denying summary judgment was based on the resolution of a legal question that affected the trial.[45] In *Western Pioneer, Inc. v. Harbor Enterprises, Inc.*, both parties disputing the terms of a lease filed motions for summary judgment; the superior court denied both motions, ruling that a disputed issue existed because the lease agreement was reasonably susceptible to different meanings.[46] At trial, the parties litigated the meaning of the agreement, and the jury found in favor of Harbor Enterprises.[47] Western Pioneer then appealed, arguing that the superior court erred in denying its motion for summary judgment.[48] We treated the meaning of the contract as a question of law and ruled on the issue de novo. After reviewing the record and determining that the contract had only one reasonable meaning, we concluded that the trial court had committed a legal error in deciding that an unresolved issue precluded summary judgment.[49] Because this legal error affected the conduct of the trial, we reversed the jury verdict for Harbor Enterprises.[50]

Shortly after *Western Pioneer*, we reviewed a similar order denying summary judgment in *Johnson v. Alaska State Department of Fish and Game*.[51] In *Johnson*, the appellants moved for summary judgment on their discrimination claim, asking the trial court to give preclusive effect to the Alaska Human Rights Commission's finding of discrimination.[52] The superior court denied the motion without comment.[53] On appeal, we ruled that orders denying summary judgment could be reviewed on appeal after trial, "but only if the facts applicable to the summary judgment ruling were not in dispute."[54]

Because the underlying facts were undisputed and the superior court had denied summary judgment on a legal basis, we reviewed the order, determined that the court had erred as a matter of law in failing to enforce the Commission's finding, and remanded for a modified judgment giving the Commission's finding preclusive effect.[55] Like *Western Pioneer*, then, *Johnson* allowed post-trial review of an order denying summary judgment only because the order had been entered on a legal ground that affected the subsequent trial.

## D. Reviewability of District Court's Order Denying Summary Judgment

■ Considering our own prior rulings and the compelling weight of the federal cases, we conclude that policy, reason, and precedent militate in favor of a rule that precludes post-trial review of orders denying motions for summary judgment—at least when the "motions are denied on the basis that there are genuine issues of material fact."[56] We hold, in such cases, that the order becomes unreviewable after a trial on the merits.

The district court in this case denied summary judgment to Benediktsson because it determined that a genuine factual dispute existed as to Larson's employment status. Despite the trial court's reliance on this factual ground, Benediktsson claims that the superior court's review of the summary judgment order was proper. Citing *Johnson's* statement allowing post-trial review "if the facts applicable to the summary judgment ruling were not in dispute,"[57] Benediktsson insists that this case meets *Johnson's* condition because both he and the superior court

45. *Ondrusek v. Murphy*, 120 P.3d 1053, 1056 n. 2 (Alaska 2005).

46. *Western Pioneer, Inc. v. Harbor Enters., Inc.*, 818 P.2d 654, 655–56 (Alaska 1991).

47. *Id.* at 656.

48. *Id.*

49. *Id.* at 658.

50. *Id.*

51. *Johnson v. Alaska State Dep't of Fish & Game*, 836 P.2d 896, 903–04 (Alaska 1991).

52. *Id.*

53. *Id.* at 904.

54. *Id.* at 904 n. 11.

55. *Id.* at 900.

56. *Ondrusek*, 120 P.3d at 1056 n. 2.

57. *Johnson*, 836 P.2d at 904 n. 11.

believed that no issues of material fact prevented summary judgment and that the only material issue raised a pure legal question: whether Larson was an employee or a contractor.

But the approach we have adopted focuses on the district court's basis for ruling, not on Benediktsson's or the superior court's belief that the case could be resolved as a matter of law. To be sure, Benediktsson could have raised a similar challenge to the judgment the district court entered after trial; but he elected not to challenge the court's final judgment, expressly urging the superior court to review only the order denying summary judgment and the record before the district court when it entered that order.

 The superior court accepted Benediktsson's argument and reviewed the case on the narrow issue he presented. The court reversed the district court's summary judgment order, finding that any unresolved facts were immaterial as a matter of law because—regardless of the case-specific circumstances surrounding Larson's agreement with Benediktsson—the tasks Larson agreed to perform qualified by literal definition as contractor's work and thus required him to be registered. Yet as we pointed out in discussing the district court's decision granting Larson's motion to amend his answer, Larson's employment status did not present a pure issue of law: under Alaska's flexible approach for determining contractor status, Larson's agreement to frame houses for Benediktsson did not, standing alone, make him "[a] person acting in the capacity of a contractor."[58] Because resolving the case-specific facts surrounding the disputed agreement and Larson's registration status might have made a material difference, we see no basis for treating the district court's order denying summary judgment as having been based on a legal ground arising from undisputed facts.

Since we conclude that the district court denied summary judgment on factual grounds, it follows that after the court conducted a trial, its order denying summary judgment was unreviewable on appeal to the superior court. Since the narrow form of the rule precluding post-trial review applies here, we find no need to consider whether the broader form should be applied in other situations.

## IV. CONCLUSION

 We hold that an order denying summary judgment on factual grounds becomes unreviewable on appeal after a trial on the merits. Applying this rule, we further hold that the district court's summary judgment order was not reviewable by the superior court. We also discern no error or abuse of discretion in the district court's order allowing Larson to amend his answer. Because Benediktsson's appeal challenged no other aspects of the district court's judgment, we VACATE the superior court's order granting the appeal, AFFIRM the district court's final judgment, and REMAND with directions that the district court's judgment be REINSTATED.